**Michael Leon WARDEN, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15725.**

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1972.

As Corrected Jan. 31, 1972.

As Modified on Rehearing Aug. 8, 1972.

Simon B. Spradlin, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

Plaintiff in Error, Michael Leon Warden, hereafter referred to as defendant, was convicted by jury verdict in the District Court of Oklahoma County, Case No. CRF–69–1228, of Manslaughter in the First Degree, After Former Conviction of a Felony, and sentenced to twenty-five (25) years imprisonment. Judgment and sentence was imposed on October 30, 1969, and this appeal perfected therefrom.

Specifically, it was charged that defendant, while driving under the influence of intoxicating liquor, drove through a stop light without stopping and into an automobile in which Bernice Eads, a passenger, suffered injuries resulting in her death. The evidence established that about 5:00 P.M., on June 8, 1969, the defendant drove his automobile into the intersection of Northwest Tenth and Classen, in Oklahoma City, and collided with an automobile driven by Orville Eads and occupied by Bernice Eads. Mr. Eads and a witness at the scene, R. M. Nichols, testified that defendant's automobile ran a red light and collided with the Eads' car, which was proceeding on a green light.

As the investigating officer, Bill Harrison, arrived at the scene, the defendant and Mr. & Mrs. Eads were being removed on stretchers by ambulance attendants; they were taken to St. Anthony Hospital. After the injured had been removed, Officer Harrison completed his investigation, noting that defendant's vehicle had left twenty-one (21) feet of skid marks. Upon completing his investigation at the scene, Officer Harrison went to the hospital and learned that Mrs. Eads was dead on arrival. The officer then approached defendant, who was lying on a stretcher, and observed the strong odor of alcohol about the defendant, that his eyes were red and watery; and that he appeared sleepy, all being characteristics associated with drinking. It was the officer's opinion that defendant was drunk.

The officer checked with the hospital staff as to defendant's condition, and shortly thereafter defendant was released from the hospital. At this point the officer advised defendant he was under arrest, advised him of his constitutional rights, and escorted him to jail. At the jail, defendant was asked if he would take a breathalyzer test for alcohol in his blood, and was advised that if he refused it would be grounds to suspend his automobile operator's license for a period of six (6) months. Defendant consented and the test, administered by Officer Brown, indicated sixteen-hundredths of one percent (.16%). By Statute, 47 O.S.1971, § 756(c), evidence of fifteen-hundredths of one percent (.15%) or more by weight of alcohol in the blood is prima facie evidence the person is under the influence of alcohol or intoxicating liquor.

It is defendant's first and primary contention that it was error to admit testimony concerning the breathalyzer test and its results since (a) the test was not administered within two hours of defendant's arrest, and (b) its results under the Implied Consent Law are limited only to prosecutions for driving while intoxicated and not manslaughter prosecutions.

Title 47 O.S.1971, § 756, provides in relevant part:

"Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of alcohol or intoxicating liquor, evidence of the amount of alcohol in the person's blood as shown by a chemical analysis of his blood or breath is admissible. For the purpose of this section:

"* * *

"(c) evidence that there was fifteen-hundredths of one percent or more by weight of alcohol in his blood shall be admitted as prima facie evidence that the

person was under the influence of alcohol or intoxicating liquor;

"* * *

"(e) To be admissible such evidence must first be qualified by establishing that such specimen was obtained from the subject within not more than two hours of the arrest of the subject. Laws 1967, c. 86 § 6. Eff. Jan. 1, 1969."

■ From a reading of Section 756, it is apparent that the results of such a test are admissible in the trial of "any criminal action or proceeding arising out of acts" committed by a person driving under the influence of alcohol. This would obviously include the instant prosecution. Accordingly, we reject defendant's contention that results of such tests are limited to "driving while intoxicated" prosecutions.

■ As to the time of the test, defendant argues he was technically under arrest when Officer Harrison arrived at the accident scene shortly after 5:00 P.M., and that the test was not administered until 8:35 P.M. This argument fails as it is clear defendant was not under arrest at the accident scene. Defendant was removed from the scene by ambulance and taken to the hospital for medical reasons, not by authority of an arrest or by police direction. At this point defendant was not in Officer Harrison's custody or any other officer's custody. It was not until defendant's release from the hospital that he was arrested at approximately 8:00 P.M. Even if it could be said that Officer Harrison exercised some control over defendant before his hospital release, that control did not begin until the officer arrived at the hospital and approached the defendant. We, therefore, find that the specimen was obtained from defendant within not more than two hours of his arrest in compliance with 47 O.S.1971, § 756(e).

■ It is defendant's second contention that the testimony of Orville Eads, deceased's husband, was irrelevant and prejudiced, and it was error to admit such over defense objection. Mr. Eads was brought into court on a stretcher, and remained prone thereon during his testimony. It may well be that Mr. Eads' appearance struck a sympathetic response with the jurors, but that does not distract from the controlling factor that Mr. Eads was an eyewitness to the accident and his testimony was both material and competent. Defendant cites no authorities in support of his position, and we conclude this contention is without merit.

■ It is defendant's third and last assignment that it was error for the trial court to refuse defendant's requested instruction on negligent homicide. The Record shows that defendant requested an instruction on second degree manslaughter, 21 O.S.1971, § 716. Such an instruction would not be proper in view of Atchley v. State, Okl.Cr., 473 P.2d 286 (1970), which held:

"Every killing of one human being by the act, procurement, or culpable negligence of another, which under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree. Title 21, O.S.A. § 716 has been superseded or repealed by implication by enactment of following statute:

'When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.' Title 47, O.S.A. § 11–903.'"

Furthermore, under the facts, it was not error for the trial court not to instruct on negligent homicide in view of White v. State, Okl.Cr., 483 P.2d 751 (1971):

"We therefore hold, subject to sufficient proof of intoxication being available, a condition of intoxication takes the offense of homicide, resulting from an automobile accident, out of the definition of 'Negligent Homicide' and a conviction

for Manslaughter laid under 21 O.S. § 711 will be sustained."

Having considered defendant's assignments of error and finding them to be without merit, we conclude that the judgment and sentence must be and the same is hereby affirmed.

BUSSEY, P. J., and SIMMS, J., concur.