**In the Matter of the Appeal of the Revocation of the Driver's License of Betty L. DUNGAN, Appellant.**

**No. 61214.**

Supreme Court of Oklahoma.

May 1, 1984.

Jess Horn, Jess Horn, Inc., Oklahoma City, for appellant.

Stephen G. Fabian, Jr., Timothy A. Brauer, Intern, Dept. of Public Safety, Oklahoma City, for appellee.

ALMA WILSON, Justice.

The appellant, Betty L. Dungan, appeals the decision of the District Court of Canadian County sustaining the revocation of her driver's license by the Department of Public Safety.

Three issues are presented for review: (1) Whether the failure of the Department of Public Safety to provide a recording of the revocation hearing was violative of appellant's statutory and constitutional rights? (2) Whether there was evidence at trial of a valid arrest? (3) Whether the chemical testing of appellant's breath was timely accomplished?

The facts are that around midnight June 11, 1983, Yukon police officer, Randy Cowell, stopped to question a group of people standing in the street on West Main in Yukon. One of the men in the group told Cowell there had been an accident north of town in which a gas line had been hit. When the officer asked who had been driving, the man, whom Cowell recognized as an off-duty policeman of the City of Piedmont, pointed to the appellant, who was standing in the group. She told Cowell that her car went off the road when it hit a puddle of water.

Officer Cowell testified that he detected an odor of alcohol about her and observed that she seemed unsteady on her feet. He asked her if someone could drive her to the police station where he would meet her after he had investigated the broken gas line. He testified that he did not then place the appellant under arrest. At approximately 1:30 a.m., while waiting for the gas company and wrecker to arrive at the scene of the accident, Officer Cowell called the police station and told Officer Kemerley to place the appellant under arrest and to give her a breathalyzer test. Before giving her the test, Kemerley read the appellant the following rights which included the statement:

"You have been arrested for driving, or being in actual physical control of a motor vehicle while under the influence of intoxicants. You are requested to submit to a test, for the purpose of determining the presence of concentration of intoxicants in your body.... You may refuse the State's test, but as a consequence your driver's license shall be revoked for six months by the Department of Public Safety...."

The breathalyzer test was administered at 1:47 a.m. and indicated an alcohol content of .13.

Under the authority of 47 O.S. § 754(3),[1] the appellant's driver's license was revoked for 90 days for having a blood alcohol concentration of 0.10 or above. The appel-

---

1. 47 O.S. § 754(3) provides in part:
 Upon receipt of a written blood or breath test report reflecting that the arrested person had an alcohol concentration of ten hundredths (0.10) or more, accompanied by a sworn report from a law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state, while under the influence of alcohol, the Commissioner of Public Safety shall revoke the license to drive of the arrested person and any nonresident operating privilege for a period of ninety (90) days.

lant requested and was granted an administrative hearing. Title 47 O.S.Supp.1982, § 754(5), provides that the hearing shall be recorded and its scope shall cover the issues of whether the officer had reasonable grounds to believe the person had been driving while under the influence of alcohol and whether the person was placed under arrest. If the revocation is based upon a breath or blood test result, the scope of the hearing shall also cover the issues of whether: (1) the testing procedures used were in accordance with the existent rules of the Board of Tests for Alcohol and Drug Influence; (2) the person was advised that his privilege to drive would be revoked or denied if the test result reflected an alcohol concentration of ten-hundredths (0.10) or more; (3) the test result in fact reflects such alcohol concentration; and (4) the breath or blood specimen was obtained from the person within two (2) hours of his arrest.

■ From the hearing examiner's sustention of the revocation order the appellant appealed to the District Court of Canadian County pursuant to 47 O.S.1981, § 6–211. Appeals from implied consent revocation orders are heard de novo in the district court, with the "trial de novo" being a trial of the entire case anew, both on the law and on the facts. *Matter of Braddy*, 611 P.2d 235 (Okl.1980). The District Court sustained the revocation of appellant's driver's license.

■ In her first assignment of error, the appellant urges she was prejudiced by the unavailability of the administrative hearing transcript in that she was precluded from impeaching the Department's witnesses by use of prior inconsistent statements.

The Department of Public Safety asserts that the administrative hearing was recorded as required by Section 754 of Title 47 but that due to a technical failure the recording was faulty and not available. In *Matter of Braddy, supra,* this Court held that the inability of the Department of Public Safety to furnish a transcript of the tape-recorded hearing did not per se require dismissal of the revocation proceed-ing, absent a showing of prejudice. The appellant argues she was actually prejudiced because at the hearing Officer Cowell allegedly testified he did not tell Officer Kemerley to place her under arrest, but rather only told him to give her the breathalyzer test. At the trial in District Court, Cowell testified he told Officer Kemerley to place her under arrest, to read her the implied consent card, and to administer the test if she agreed. The appellant was allowed to cross-examine both Officers Cowell and Kemerley on this detail, and with the witness rule having been invoked, their statements were in accord. Additionally, the trial court itself examined Kemerley on this point, with the same result. Of significant import is the fact that when read her rights the appellant was told, "You have been arrested. . . ."

Upon careful examination of the record, district court transcript, and briefs, we find that substantial rights of the appellant were not prejudiced by reason of the Department's inability to furnish a transcript of the hearing.

Second, the appellant claims there was no evidence showing that a valid arrest had been made. She urges that she was never placed under custodial arrest because she voluntarily went to the police station to wait for Officer Cowell at his direction. She further refutes that the reading of the implied consent chemical test card accomplished a valid arrest.

■ A valid arrest is necessary under the Implied Consent Law, 47 O.S.Supp. 1982, § 751, *et seq.,* before a police officer may request a driver of a motor vehicle to submit to a chemical test for blood alcohol. 47 O.S.Supp.1982, §§ 751, 754; *White v. Oklahoma Dept. of Public Safety,* 606 P.2d 1131 (Okl.1980); *Marquardt v. Webb,* 545 P.2d 769 (Okl.1976); *Application of Baggett,* 531 P.2d 1011 (Okl.1974).

Prior to the amendment of 22 O.S.1971, § 196, a peace officer's authority to make warrantless misdemeanor arrests for driving under the influence was limited to offenses committed or attempted in his pres-

ence. *See, Puckett v. State*, 363 P.2d 953 (Okl.Cr.1961); *Farnsworth v. State*, 343 P.2d 744 (Okl.Cr.1959); *Hoskins v. State*, 286 P.2d 293 (Okl.Cr.1955). Amendments in 1975 and 1977 expanded an officer's authority for warrantless arrests to include instances where at the scene of an accident he has reasonable cause to believe that the party was driving a motor vehicle involved in the accident and was under the influence of intoxicants. *See*, Okl.Sess.Laws 1975, c. 228, § 1; Okl.Sess.Laws 1977, c. 27, § 1. In 1982, the Legislature broadened the pertinent provision of Section 196, which today reads as follows:

A peace officer may, without a warrant, arrest a person:

\* \* \* \* \* \*

5. When he has probable cause to believe that the party was driving or in actual physical control of a motor vehicle involved in an accident upon the public highways, streets or turnpikes and was under the influence of alcohol or intoxicating liquor or who was under the influence of any substance included in the Uniform Controlled Dangerous Substances Act, Sections 2–101 et seq. of Title 63 of the Oklahoma Statutes.

In *Castellano v. State*, 585 P.2d 361 (Okl.Cr.1978), the Court of Criminal Appeals defines "arrest" as the taking, seizing, or detaining the person of another either by touching, or by any act which indicates an intention to take him into custody and subject the person arrested to actual control and will of person making arrest, or any deprivation of liberty of one person by another or any detention of him, for however short a time, without his consent, and against his will, whether it was by actual violence, threats or otherwise. The court in *Castellano* further noted that the distinction between an investigatory detention and a full arrest is largely a matter of degree and where the line is drawn often depends upon the intention of the officer involved. The testimony indicates that the appellant waited outside the police station, apparently unsupervised until Officer Kemerley sought her out.[2] It therefore appears it was not until that time she was under arrest.

■■■ We find no infirmity with the finding that the appellant had been arrested; her arrest was effected by Officer Kemerley at the station when in the course of reading her rights he advised her she had been arrested. Kemerley, acting upon information from Officer Cowell, coupled with his own observation of the appellant and her admission to Kemerley that she was the driver of the vehicle involved in the accident, had probable cause to make a warrantless arrest under Section 196(5), *supra*. While it is often used in the context of warrantless felony arrests, the rule stated in *Holt v. State*, 506 P.2d 561 (Okl.1973), would have application in a warrantless misdemeanor arrest effected under subparagraph (5). That rule is that officers may rely upon his fellow officers to supply information which forms the basis of the arresting officer's reasonable grounds for believing the law is violated.

■■■ Finally, the issue of whether the chemical testing of appellant's breath was timely accomplished involves two arguments. The appellant's first contention is that the Department of Public Safety failed to establish that the test specimen was obtained within two hours of her initial contact with police.

Title 47 O.S.Supp.1982, § 756 requires that to be admissible into evidence, the breathalyzer test must first be qualified by establishing that it was administered within two hours after arrest. The appellant was arrested at the police station at 1:30

---

2. The facts here are distinguishable from those in *Hill v. State*, 500 P.2d 1080 (Okl.Cr.1972). There it was held that where defendants submitted to color of authority of officer who asked if they would come down to the police department for some questioning, were followed by the officer as they drove to the police station and were not free to travel in a direction other than that directed by the police officer, without being impeded by the officer, arrest occurred at that point in time when the officer directed the defendants to go to the police department, even though they were not told they were under arrest.

a.m. and was administered the test at 1:47 a.m. In *Warden v. State,* 499 P.2d 937 (Okl.Cr.1972), the defendant was not under arrest at the scene of the accident which occurred at 5:00 p.m., and it was not until his release from the hospital that he was arrested at approximately 8:00 p.m. There the Court of Criminal Appeals held that the breathalyzer test administered at 8:35 p.m. was properly administered within not more than two hours after his arrest. We find this authority dispositive here.

The second part of the appellant's argument is that the Department failed to demonstrate the connection between the results of the chemical testing and her condition at the time she was driving. There was no testimony as to the time the accident occurred, or as to the appellant's activities between the time of the accident and her first contact with Officer Cowell, or between the time she arrived at the police station and her arrest.

 In cases involving revocation of driver's license under the Implied Consent Law, the test of sufficiency of the evidence is the preponderance of the evidence. *Peters v. Oklahoma Dept. of Public Safety,* 557 P.2d 908 (Okl.1976). Pursuant to Section 754(5), the burden was on the Department to prove that it was more probably true than not true that the officer had reasonable grounds to believe the appellant had been driving while under the influence of intoxicants, in contradistinction to proving *the fact* that the appellant had been driving under the influence.[3] As we stated in *Application of Baggett, supra,* at 1016, "probable cause" and "reasonable grounds to believe" are synonymous. It is generally held that the test in determining probable cause for a warrantless arrest, is whether the officer's information at the moment of arrest justifies a reasonably prudent person in the belief that the suspect had committed an offense. Applying

these standards to the evidence at bar, we find that the Department met its burden of proof, notwithstanding its failure to establish the time the accident occurred and whether the appellant had imbibed only after the accident.

The order of the District Court is AFFIRMED.

BARNES, C.J., SIMMS, V.C.J., and HODGES, LAVENDER and HARGRAVE, JJ., concur.

DOOLIN and KAUGER, JJ., dissent.

OPALA, J., concurs in part, dissents in part.

---

3. The 1971 version of Section 754 differed in that it required proof that the person had been in fact driving under the influence:

The hearing shall be transcribed and its scope cover the issues of *whether the person had*

*been driving* or was in actual physical control of a vehicle upon the public highways while under the influence of alcohol or intoxicating liquor, ... 47 O.S.1971, § 754.

*See Application of Baggett, supra,* at 1018–1019.