OSCN Found Document:MURATORE v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 MURATORE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2014 OK 3
320 P.3d 1024
Case Number: 111586
Decided: 01/28/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 3, 320 P.3d 1024

MARK M. MURATORE, Plaintiff-Appellee,
v.
STATE OF 
OKLAHOMA, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant-Appellant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I, 
ON
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, 
STATE
OF OKLAHOMA, HONORABLE JAMES B. CROY

¶0 Mark Muratore, after being arrested for driving under the influence, 
submitted to a breathalyzer test. The breathalyzer test was administered using 
the Intoxilyzer 8000, and the test result reflected an alcohol concentration of 
.11. The Department of Public Safety revoked Mr. Muratore's driver's license for 
one year, and he appealed the revocation to the District Court of Oklahoma 
County on issues of the admissibility of the breathalyzer test. The trial court 
vacated the revocation of Mr. Muratore's driver's license, finding that the 
Board of Tests had no rules in place governing maintenance procedures for the 
Intoxilyzer 8000 and that the manufacturer's certificate of calibration for this 
particular Intoxliyzer 8000 and the supplier's certificate of analysis for the 
gas canister used as a reference method for the Intoxilyzer 8000 were 
inadmissible hearsay. The Court of Civil Appeals reversed. We granted certiorari 
and find that the trial court did not abuse its discretion in refusing to admit 
the manufacturer's certificate of calibration and the supplier's certificate of 
analysis. We also find that the Department of Public Safety did not meet its 
threshold burden of proving all the facts necessary to sustain the revocation of 
Mr. Muratore's license, and the record supports the trial court's decision to 
vacate the revocation of Mr. Muratore's driver's license.

COCA OPINION VACATED; TRIAL COURT'S ORDER VACATING 
THE
REVOCATION OF PLAINTIFF-APPELLEE'S DRIVER'S LICENSE
AFFIRMED

Stephen G. Fabian, Jr., Oklahoma City, Oklahoma, Attorney for 
Plaintiff-Appellee
Joanne Horn, Assistant General Counsel, Department of 
Public Safety, Oklahoma City, Oklahoma, Attorney for 
Defendant-Appellant


GURICH, J.
Facts and Procedural History
 
¶1 On April 21, 2012, at approximately 11:30 p.m., Plaintiff-Appellee Mark 
Muratore was arrested by Officer Tim Harwell of the Edmond Police Department for 
operation of a motor vehicle while under the influence of an intoxicating 
substance. The arresting officer read him the Oklahoma Implied Consent advisory 
and transported Muratore to the booking area of the Edmond city jail where he 
voluntarily submitted to a breathalyzer test. The breathalyzer test was 
administered using the Intoxilyzer 8000, a device approved by the Board of Tests 
for Alcohol and Drug Influence. At 11:51 p.m. the officer began the 
fifteen-minute deprivation period.[1] Once the fifteen-minute deprivation period was over, 
the officer took the first breath sample at 12:08 a.m. on April 22, 2012, with a 
test result of .11g/210L.[2] The second sample was taken at 12:11 a.m. with a 
test result of .11g/210L.[3] Using the Officers' Affidavit and Notice of 
Revocation/Disqualification form provided by the Department of Public Safety, 
the officer prepared and served the Affidavit revoking Mr. Muratore's driver's 
license. On April 23, 2012, Mr. Muratore requested an administrative hearing 
with DPS concerning the revocation of his driver's license. An administrative 
hearing was held on November 7, 2012, and the hearing officer sustained the 
revocation. Mr. Muratore appealed to the District Court of Oklahoma County.
¶2 At trial, the parties stipulated to the following facts: 1) the officer 
had reasonable grounds to stop Mr. Muratore; 2) Mr. Muratore was operating a 
motor vehicle on the roadways of Oklahoma; 3) the officer arrested Mr. Muratore; 
4) the officer read the implied consent advisory to Mr. Muratore; and 5) Mr. 
Muratore agreed to take the breathalyzer test. The only witness, Officer 
Harwell, testified that although he was trained by the Board of Tests to operate 
the Intoxilyzer 8000 and his permit for administering the test was current at 
the time of the arrest, the affidavit he signed contained several errors, 
including the date of arrest,[4] the date the affidavit was served, and the date the 
officer signed the affidavit.[5]
¶3 The trial court admitted a number of exhibits at trial,[6] including the arresting 
officer's affidavit, but refused to admit the manufacturer's Certificate of 
Calibration for the Intoxilyzer 8000, serial number 80-003810, dated March 26, 
2009, and the ILMO Specialty Gases Certificate of Analysis for the gas canister, 
lot number 03112080AI, dated February 10, 2012. The trial court found both 
documents were hearsay and did not fall under the public records exception to 
the hearsay doctrine found in 12 O.S. 
2011 § 2803(8) because they were not created by the Board of Tests. After 
hearing argument from both sides, the trial court also found the Board of Tests 
had no rules in place governing maintenance procedures for the Intoxilyzer 8000. 
The trial court reversed the revocation of Mr. Muratore's driver's license.
¶4 DPS appealed, and COCA reversed, disagreeing with the trial court's 
interpretation of the facts:

 
 We here note that, in support of his argument to affirm, Muratore argues 
 the breathalyzer was obviously malfunctioning, and the trial court so 
 properly determined, given the discrepancy between the date of arrest 
 entered by the officer ("4/22/2012) and the "date of test" entered 
 automatically by the breath testing device ("04/21/2012"). However, from 
 our examination of the Officer's Affidavit and Notice of Revocation, and 
 considering the admitted date of the arrest on April 21, and the 
 beginning of the deprivation period just before midnight on April 21, 
 it seems more likely the device recorded the correct time (11:53 
 p.m.) when the deprivation period began on April 21, 2012, as 
 the correct starting "date of test" ("04/21/2012"), and some fourteen 
 minutes later, at "00:07" (12:07 a.m.) on April 22, 2012, 
 recorded the result of the first of three "air blank" reference tests before 
 recording the analysis of Muratore's first breath sample at "00:08" (12:08 
 a.m.) on April 22, 2012.
Mark Muratore v. State, ex rel. Dep't of Pub. Safety, Case No. 
111,586, at 16 n.1 (May 10, 2013) (published) (emphasis added). Mr. Muratore 
petitioned this Court for certiorari review, and we granted certiorari on 
November 25, 2013.
Standard of Review
¶5 The District Court's review of a driver's license revocation is conducted 
de novo, "with the 'trial de novo' being a trial of the entire case anew, both 
on the law and on the facts." Appeal of Dungan, 1984 OK 21, ¶ 7, 681 P.2d 750, 752; see 
also 47 O.S. 2011 § 
6-211(I). To revoke a driver's license based upon a breath test result and a 
sworn report from a law enforcement officer, DPS bears the burden in the 
district court of proving by a preponderance of the evidence "all facts 
necessary to sustain the revocation, including the operation/actual physical 
control of a motor vehicle while intoxicated, a valid arrest, proper advice of 
rights and consequences, as well as consent to and performance of a valid test 
on a properly maintained testing device." Derrick v. State ex rel. Dep't of 
Pub. Safety, 2007 OK CIV APP 
56, ¶ 11, 164 P.3d 250, 253 
(citing 47 O.S. § 754(F)(1); 47 O.S. § 6-211; Smith v. State, 
ex rel. Dep't of Pub. Safety, 1984 
OK 16, ¶ 6-8, 680 P.2d 365, 
368; Westerman v. State, 1974 OK 
CR 151, ¶ 11, 525 P.2d 1359, 
1361).
¶6 "Revocation appeal proceedings in the district court are exempt from the 
provisions of the Oklahoma Pleading and Discovery codes, but they are not exempt 
from the Oklahoma Evidence Code." Hedrick v. The Comm'r of the Dep't of Pub. 
Safety, 2013 OK 98, 
____P.3d____. The trial court's determination to admit or not admit evidence 
under one of the hearsay exceptions will not be disturbed absent an abuse of 
discretion. Kerr v. Clary, 2001 OK 90, ¶ 15, 37 P.3d 841, 844. In reviewing the 
revocation of a driver's license on appeal, this Court will not reverse the 
trial court's judgment "if there is any evidence, or any reasonable inference to 
be drawn therefrom, which tends to support [the trial court's] findings." 
Smith, 1984 OK 16, ¶ 7, 680 P.2d 365, 368. see 
also Hollis v. State ex rel. Dep't of Pub. Safety, 2008 OK 31, n.4, 183 P.3d 996, 999 n.4 ("Unless the 
lower court's rulings are found to be erroneous as a matter of law, or 
unsupported by evidentiary foundation, the appellate courts will not disturb 
the findings made.") (emphasis added).
Analysis
The Trial Court Did Not Abuse Its Discretion in Refusing 
to Admit the Manufacturer's Certificate of Calibration and the Supplier's 
Certificate of Analysis
¶7 At trial, DPS attempted to offer into evidence a Certificate of 
Calibration for the Intoxilyzer 8000, serial number 80-003810, from the 
manufacturer of the device, CMI, Inc. The certificate claims to certify that the 
calibration of the device was tested on March 26, 2009, and found to be in 
compliance with the National Safety Administration Standard for Devices to 
Measure Breath Alcohol. DPS also attempted to offer into evidence a Certificate 
of Analysis from ILMO Specialty Gases, a supplier of the gas canisters used as a 
reference method for the Intoxilyzer 8000. The certificate claims to certify 
that on February 10, 2012, the gas canister, lot number 03112080AI, contained a 
ratio of ethanol and nitrogen appropriate for use with breath alcohol testing 
instruments. Counsel for Mr. Muratore timely objected to the admission of both 
certificates as hearsay.[7]
¶8 It is undisputed that both certificates are hearsay because they were 
offered to prove the truth of the matter asserted--that both devices were in 
proper working order.[8] But DPS argued both certificates were admissible 
under 12 O.S. 2011 § 2803(8), the 
public records hearsay exception, which excludes from the hearsay rule:

 
 [A] record of a public office or agency setting forth its regularly 
 conducted and regularly recorded activities or matters observed pursuant to 
 duty imposed by law and as to which there was a duty to report, or factual 
 finding resulting from an investigation made pursuant to authority granted 
 by law.
¶9 The Certificate of Calibration for the Intoxilyzer 8000 was prepared by 
CMI, Inc., the manufacturer of the Intoxilyzer 8000 and signed by one of its 
technicians. The Certificate of Analysis for the gas canister was prepared by 
ILMO Specialty Gases, a supplier of gas canisters, and signed by a specialty gas 
lab technician. As the trial court correctly noted, neither of the certificates 
offered by DPS was prepared by a member of the Board of Tests or any other 
public officer of this state, so neither is a public record for purposes of the 
public records exception to the hearsay doctrine. DPS argued the certificates 
were public records because they were regularly kept records of the Board of 
Tests, but this argument misses the point. The "[j]ustification for the 
exception is the assumption that a public official will perform his duty 
properly and the unlikelihood that he will remember details independently of the 
record."[9] 
Because these certificates were created by third parties--CMI, Inc., and ILMO 
Specialty Gases--and not a public official, the trial court correctly concluded 
that the public records exception to the hearsay doctrine did not apply.
¶10 The certificates are also not admissible in this case under the business 
records exception to the hearsay doctrine.[10] Section 2803(6) excludes from the 
hearsay rule:

 
 A record of acts, events, conditions, opinions or diagnosis, made at or 
 near the time by or from information transmitted by a person with knowledge, 
 if kept in the course of a regularly conducted business activity, and if it 
 was the regular practice of that business activity to make the record, all 
 as shown by the testimony of the custodian or other qualified witness, or by 
 certification that complies with paragraph 11 or 12 of Section 2902 of this 
 title, or with a statute providing for certification, unless the source of 
 information or the method or circumstances of preparation indicate lack of 
 trustworthiness. The term "business" as used in this paragraph includes 
 business, institution, association, profession, occupation and calling of 
 every kind, whether or not conducted for profit.
12 O.S. 2011 § 2803(6).
¶11 Section 2803(6) requires a proper foundation for the admission of 
documents pursuant to this exception. A "custodian or other qualified witness" 
must testify that the record was made "at or near the time by or from 
information transmitted by a person with knowledge," the record was "kept in the 
course of a regularly conducted business activity," it was "the regular practice 
of that business activity to make the record," and no "source of information or 
the method or circumstances of preparation indicate lack of trustworthiness." 12 O.S. 2011 § 2803(6).
¶12 Although these certificates may have been "kept in the course of a 
regularly conducted business activity," no custodian or other qualified witness 
testified as to whether the certificates were made at or near the time of the 
events memorialized in the certificates or whether it was the regular practice 
of either CMI, Inc. or ILMO Specialty Gases to make certificates of these types. 
The "[r]eliability of business records is said variously to be supplied by 
systematic checking, by regularity and continuity which produce habits of 
precision, by actual experience of business in relying upon them, or by a duty 
to make an accurate record as part of a continuing job or occupation."[11] DPS 
presented no evidence indicating the reliability of these certificates as 
required by § 2803(6).[12]
¶13 Using a novel theory, COCA concluded that the certificates "kept by the 
Board of Tests as part of its regularly kept records, constitute non-testimonial 
evidence. As such, the certificates are admissible and admission of those 
certificates does not violate the confrontation clause of the Sixth 
Amendment."[13] Neither party raised the Confrontation Clause 
at the hearing with the trial court, nor did they brief the issue.
¶14 The Confrontation Clause provides that "[i]n all criminal 
prosecutions, the accused shall enjoy the right . . . to be confronted with 
the witnesses against him."[14] The Oklahoma Court of Criminal Appeals has stated 
that "under the Confrontation Clause, testimonial hearsay statements may be 
admitted against the accused in a criminal trial only when the declarant 
is unavailable to testify and the defendant has had a prior opportunity to 
cross-examine the declarant." Taylor, 2011 OK CR 8, ¶ 32, 248 P.3d at 373 
(citing Crawford, 541 U.S. at 68) (emphasis added). In determining 
whether a defendant's Sixth Amendment right to confrontation has been violated, 
the critical question is whether the statement is "testimonial" under the 
Crawford Doctrine.[15]
¶15 The Confrontation Clause only applies in criminal cases. The case 
before us is an administrative appeal of a revocation of a driver's license, and 
the Confrontation Clause cases relied on by COCA are not dispositive of whether 
the documents DPS sought to introduce are admissible under the hearsay doctrine. 
Although the Confrontation Clause and the hearsay doctrine sometimes coincide, 
the doctrines operate independently of one another.[16] As the case before us demonstrates, 
a statement considered "nontestimonial" and admissible for purposes of the 
Confrontation Clause is not necessarily admissible under the hearsay doctrine, 
as COCA incorrectly concluded. See, e.g., State v. Pugh, 225 P.3d 
892, 831-32 (Wash. 2009) ("Nontestimonial hearsay, on the other hand, is 
admissible under the Sixth Amendment subject only to the rules of evidence.").[17] Although 
some courts have determined these types of certificates are nontestimonial 
evidence and admissible in criminal cases under the Confrontation Clause, the 
certificates are not admissible in this case under the public records exception 
to the hearsay doctrine because they were not prepared by a public official and 
are not admissible under the business records exception to the hearsay doctrine 
because DPS failed to lay a proper foundation for the admission of the 
certificates as required under that exception.
¶16 Regardless of the hearsay exceptions, the certificates were properly 
refused because they weren't relevant to whether the device was working at the 
time of Mr. Muratore's arrest. see 12 O.S. §§ 2401-2402. Calibration of 
this particular Intoxilyzer 8000 was tested and found to be in compliance with 
the National Safety Administration Standard for Devices to Measure Breath 
Alcohol on March 26, 2009. But that doesn't prove the device continued to 
work properly at the time of Mr. Muratore's arrest more than three years 
later. Similarly, an analysis of the gas canister when it left the supplier 
in March of 2012, is not conclusive proof that the canister contained the 
correct ratio of ethanol and nitrogen at the time of Mr. Muratore's arrest a 
month later. The trial court did not abuse its discretion in refusing to 
admit both certificates.
Evidence in the Record Supports the Trial Court's Decision 
to Vacate the Revocation of Mr. Muratore's Driver's 
License
¶17 On cross-examination, counsel for Mr. Muratore questioned Officer Harwell 
about inaccuracies contained in the affidavit that revoked Mr. Muratore's 
driver's license. The officer testified he manually put in the information at 
the top of the affidavit, including the arrest date of April 22, 2012,[18] but that 
the arrest date on the affidavit was incorrect because Mr. Muratore was actually 
arrested on April 21, 2012.[19] The officer also testified that the Intoxilyzer 
8000 automatically input the signature date, which was April 21, 2012.[20] He 
testified he did not sign the affidavit on the 21st as the affidavit indicated 
and that date was error.[21] The officer testified the date the affidavit was 
served showed April 21, 2012, but that he did not serve Mr. Muratore on the 21st 
as the affidavit indicated and that date was also error.[22] The exchange on 
cross-examination concluded as follows:

 
 Q: So we can feel comfortable that this affidavit is accurate?
A: Yes, 
 sir.
Q: Well, we know it's inaccurate, don't we?
A: The dates, yes 
 sir.
Q: We can feel comfortable in that respect, can't we?
A: Yes, 
 sir.[23]
The trial court found these inaccuracies troubling:

 
 How does the machine put a date earlier for the completion of the test 
 rather than the day that he says the test should have been completed? See, 
 it says here the date of arrest he put in, this is the testimony I heard, 
 4/22. And it was really 4/21, just before midnight. . . . But the machine - 
 well, actually the machine has it right there . . . says we started the 
 deprivation period at twenty-three fifty-one on 4/21. And it was finished 
 apparently at zero zero one three of 4/21, which was the day before because 
 that's when it generated that he served notice and he signed it. I have no 
 explanation for that. He had no explanation. He said, "Well now, part of 
 this was my error but the other part wasn't," the other part was 
 auto-populated by the machine. That's something that can't be explained.[24]
¶18 The trial court was also concerned that although an administrative rule 
requires the Board of Tests to implement maintenance procedures for the 
Intoxilyzer 8000, at the time of Mr. Muratore's trial, the Board of Tests hadn't 
actually implemented any rules governing the maintenance of these particular 
machines. Section 30-1-3(j) of Title 40 of the Administrative Code provides:

 
 (j) Maintenance. Maintenance shall be performed on the CMI 8000 
 Intoxilyzer, equipped with nitrogen-ethanol dry gas mixture, at such time as 
 the regulator of the nitrogen-ethanol pressurized dry gas canister fails to 
 provide a gas sample for analysis or by the manufacturers stated expiration 
 date, whichever occurs first. Such maintenance shall be performed by 
 Board personnel, according to the procedure(s) prescribed by the State 
 Director of Tests for Alcohol and Drug 
Influence.
Okla. Admin. Code § 40:30-1-3 (emphasis added).
¶19 The following exchange took place between counsel for DPS and the trial 
court:

 
 [The Court]: But let's cut right to the chase, are there rules and 
 regulations or actions by the Department governing the maintenance of these 
 machines -- the "Department" meaning the Board of Tests - either acting 
 through its director or acting as the Board itself? Does the Department have 
 any knowledge of rules, regulations, and procedures adopted by the Board or 
 promulgated by the Board or adopted by the then Department head?
 Ms. Horn: I know that the bench check procedure has been adopted over 
 there, they have been using it for five years. Now, whether Blackburne 
 approved it or whether -
 . . . .
 The Court: But the question is just much more yes or no than that. Are 
 there rules, procedures adopted by the Board, either sitting as a board or 
 through its director, that govern the maintenance and the bench check 
 procedures of the machine, the 8000?
 Ms. Horn: Well, I have provided the Court what I've got -
 The Court: [Y]ou have previously told me in other cases "No, there are 
 not." You actually called the Board and they said, "No, he didn't really do 
 that," "he" being the director at the time. I'll tell you we have been 
 offered none.[25]
¶20 Without any rules governing the maintenance of the Intoxilyzer 8000, 
there is no way to verify the bench check procedure referred to by counsel for 
DPS is sufficient to ensure the proper maintenance of these machines or that the 
person who performed the bench check was in fact qualified to perform 
maintenance on an Intoxilyzer 8000. Additionally, according to Exhibit 6, an 
affirmation of a resolution by the Board of Tests dated June 12, 2008, the 
pressurized gas cylinder used as a reference method for the Intoxilyzer 8000 
must contain "a known breath-alcohol equivalent ratio of nitrogen and ethanol 
gas."[26] But 
without any rules governing the maintenance of the Intoxilyzer 8000, there is no 
way to verify, through the bench check procedure or otherwise, whether the 
attached pressurized gas cylinder contained the correct ratio of nitrogen to 
ethanol.[27]
¶21 "[O]ne of the main purposes of the Board of Chemical Tests for Alcoholic 
Influence is to promulgate rules and regulations on operation and maintenance of 
breathalyzer equipment in order to assure the accuracy of the tests run on 
this equipment. . . . [F]ailure to comply with all the rules invalidates tests 
given on the equipment." Westerman, 1974 OK CR 151, ¶ 10, 525 P.2d at 1361 
(emphasis added). In driver's license revocation proceedings before the District 
Court, DPS bears the burden of proving, among other things, that a valid 
breathalyzer test was performed on a properly maintained testing device. DPS 
can't carry this burden when the Board of Tests has not implemented any rules 
governing the maintenance of the Intoxilyzer 8000.
Conclusion
¶22 The standard of review in cases of this nature requires the appellate 
courts to give deference to the trial court's findings and affirm if there is 
any evidence or any reasonable inference to be drawn from that evidence, which 
tends to support the trial court's findings. The inaccuracies in the officer's 
affidavit coupled with the lack of prescribed maintenance procedures for the 
Intoxilyzer 8000 is more than enough evidence to affirm the trial court's 
findings in this case, and we find that COCA improperly substituted its judgment 
for that of the trial court's in this case. DPS did not meet its threshold 
burden of proving all the facts necessary to sustain the revocation of Mr. 
Muratore's license, and the trial court's decision to vacate the revocation of 
Mr. Muratore's Driver's License is affirmed. Today's decision shall apply 
prospectively, controlling only those administrative proceedings currently 
pending before DPS and only those administrative appeals currently pending in 
the district courts or filed in the district courts after the issuance of this 
opinion. Today's opinion shall have no effect on revocation proceedings that 
have become final judgments.[28]

¶23 COLBERT, C.J., REIF, V.C.J., KAUGER, EDMONDSON, COMBS and GURICH, JJ. - 
concur.
¶24 WATT, WINCHESTER and TAYLOR, JJ. - dissent.

FOOTNOTES

[1] 
Oklahoma Administrative Code § 40:30-1-3(h) provides:
(h) Analysis. Each such analysis shall include the following 
steps:
(1) Observation of the subject whose breath is to be tested sufficient to 
determine that, for a period of at least fifteen (15) minutes prior to the 
collection of the first breath specimen, and continuing through the second 
breath specimen, the subject shall not have ingested alcohol in any form or any 
other substance, vomited, or smoked. Such observation shall be carried out by 
the breath-alcohol analysis Operator or Specialist or by any other qualified 
person.
(2) Analysis for alcohol of two (2) or more specimens of breath consisting 
substantially of expired alveolar air.
(3) A blank analysis preceding analysis of each breath specimen.
(4) Analysis for alcohol of at least one suitable reference or control sample 
of a known alcohol concentration, such as air equilibrated at a known 
temperature with a reference solution of known ethyl alcohol content in an 
alcoholic breath simulator device approved by the Board or a Board approved 
nitrogen-ethanol dry gas reference method. The results of each such control 
analysis must coincide with the corresponding vapor-alcohol concentration target 
value within plus or minus one-hundredths gram per two hundred and ten liters (± 
0.01g/210L).
(5) The operator performing each such analysis shall properly complete a 
Breath-Alcohol Analysis Record and Report form prescribed and designated by the 
State Director of Tests for Alcohol and Drug Influence, and shall promptly 
forward one (1) copy thereof to the Oklahoma Department of Public Safety, and to 
other agencies and persons listed on the form.
Okla. Admin. Code § 40:30-1-3(h).

[2] 
Transcript of Proceedings, Def. Ex. 3.

[3] 
Id.

[4] On 
direct examination the officer testified:
Q: And what was the arrest date; what was the arrest date?
A: The arrest 
date would have been the 21st.
Q: So that's an error on the affidavit?
A: 
Yes, ma'am.
Transcript of Proceedings at 24.

[5] The 
exchange on cross-examination was as follows:
Q: You said you served him on the 21st on this affidavit, that you swore was 
the truth, the whole truth, and nothing but the truth, you said here that you 
served him on the 21st?
A: Yes, sir.
Q: Now you're telling us that was an 
error?
A: It was an error.
Q: Okay. In the next section, section four, you 
swore under oath and it says on the 21st that this information is true and 
correct?
A: Yes, sir, I did sign that.
Q: I take it you did it on that 
date; correct?
A: On which date?
Q: Well, the 21st. That's what you have 
on your affidavit.
A: That I served him?
Q: That's what you said?
A: 
Yes, sir. On the Officer's Affidavit, it does state that. That is an 
error.
Q: Well, did you make an error in two places?
A: Yes, sir.
Transcript of Proceedings at 24-25.

[6] At 
trial, the following exhibits were admitted into evidence: 1) the DPS Order 
issued November 9, 2012, sustaining the revocation of Mr. Muratore's driver's 
license; 2) Mr. Muratore's driving index; 3) the Officer's Affidavit and Notice 
of Revocation; 4) a copy of the Board of Tests Administrative Rules, 40:30-1-3; 
5) a copy of the affirmation of a resolution as made at a meeting of the Board 
of Tests to approve the Intoxilyzer 8000; 6) a copy of the affirmation of a 
resolution by the Board of Tests that the pressurized gas cylinders containing a 
known breath alcohol equivalent ration of nitrogen and gas are approved for 
using in breath alcohol simulators; 7) Action 08-05 of the Board of Tests 
approving the mouthpieces to be used in breath-alcohol analysis; 8) Action 09-02 
of the Board of Tests stating the operating procedure for breath-alcohol 
analysis with the Intoxilyzer 8000 and external printer; 9) Certificate of 
Calibration and Operation for Intoxilyzer 8000, serial number 80-003810, 
prepared by the Board of Tests; 10) Bench check for Intoxilyzer 8000, serial 
number 80-003810, using an ILMO cylinder with lot number of 031120801AI. DPS 
also offered Exhibit 11 Certificate of Calibration from CMI, Exhibit 12 ILMO 
Specialty Gasses Certificate of Analysis, Exhibit 13 Aid to Court and Exhibit 14 
Implied Consent Test Request (part of stipulation). The trial court denied their 
admission but made them part of the record as offers of proof.
Transcript of Proceedings at 4-6; 15-17.

[7] 
Transcript of Proceedings at 15; 38-39. see Weathers v. Fulgenzi, 
1994 OK 119, ¶ 23, 884 P.2d 538, 543 (finding that an 
objection to admission of certain evidence must appear in the record for the 
issue to be preserved for appellate review).

[8] 12 O.S. 2011 § 2801(A)(3).

[9] Fed. R. 
Evid. 803(8) advisory committee's note (emphasis added); see also 
Hadley v. Ross, 1944 OK 
366, ¶ 18, 154 P.2d 939, 
941-42 ("The exception to the hearsay rule in this regard is justified because 
of convenience and necessity, in view of the fact that it is well recognized 
that officials perform their duties under oath without prejudice and 
bias, impelled only by official responsibility and duty. It must also be 
presumed that their duties are performed efficiently and accurately; their 
records are therefore considered trustworthy.") (emphasis added).

[10] 
Although the trial court did not rule on whether the certificates were 
admissible under the business records exception to the hearsay doctrine, counsel 
for DPS argued:
The records of a public agency setting forth regularly conducted and recorded 
activities are excluded from hearsay. The records made in the course of 
regularly conducted business activity are exempt from the hearsay rule. Those 
are both under Title 12, Oklahoma Statutes 2803, respectively sections eight 
and six.
Transcript of Proceedings at 33 (emphasis added).

[11] 
Fed. R. Evid. 803(6) advisory committee's note.

[12] DPS 
argued the certificates were reliable because they were certified copies fixed 
with the state seal. Under § 2803(6), certification that complies with 12 O.S. 2011 §§ 2902(11) & (12) 
can be used to lay a proper foundation for the admission of documents pursuant 
to this exception. But certification under 12 O.S. 2011 §§ 2902(11) & (12) 
does not mention documents fixed with the state seal. Rather subsections (11) 
and (12) require that "the document is accompanied by a written declaration 
under oath of the custodian of the record, or other qualified individual that 
the record was made, at or near the time of the occurrence of the matters 
set forth by or from information transmitted by a person having knowledge of 
those matters; was kept in the course of the regularly conducted business 
activity; and was made pursuant to the regularly conducted activity." 12 O.S. 2011 § 2902(11) & (12) 
(emphasis added). The certificates in this case were not accompanied by a 
written declaration under oath from the custodian of the records at either CMI 
Inc. or ILMO Specialty Gases.

[13] 
Mark Muratore v. State, ex rel. Dep't of Pub. Safety, Case No. 111,586, 
at 14 (May 10, 2013) (published).

[14] 
U.S. Const. amend. VI (emphasis added). The "right to confrontation [is] 
guaranteed by the Sixth and Fourteenth Amendments and Article 2, section 20 of 
the Oklahoma Constitution." Taylor v. State, 2011 OK CR 8, ¶ 32, 248 P.3d 362, 373.

[15] 
Taylor, 2011 OK CR 8, ¶ 
32, 248 P.3d at 373 ("[T]he proper focus is whether the challenged statement is 
'testimony' against the defendant, triggering the constitutional requirement of 
an opportunity for cross-examination."); U.S. v. Hendricks, 395 F.3d 173, 
179 (3d Cir. 2005) ("The lynchpin of the Crawford decision thus is its 
distinction between testimonial and nontestimonial hearsay; simply put, the rule 
announced in Crawford applies only to the former category of 
statements.").

[16] 
Matter of W.D., 1985 OK 65, 
¶ 13, 709 P.2d 1037, 1042 ("While 
it may readily be conceded that hearsay rules and the confrontation clause are 
generally designed to protect similar values, it is quite a different thing to 
suggest that the overlap is complete and that the Confrontation Clause is 
nothing more or less than a codification of the rules of hearsay and their 
exception as they existed at common law."); Seely v. State, 282 S.W.3d 
778, 782 (Ark. 2008) ("In order for hearsay statements to be admissible against 
a defendant at a criminal trial, two separate requirements must be met. First, 
an exception to the general rule prohibiting hearsay must be demonstrated. 
Second, the admission of the hearsay cannot violate the defendant's Sixth 
Amendment right "to be confronted with the witnesses against him.") (citations 
omitted); Vigil v. State, 98 P.3d 172, 177 (Wyo. 2004) ("While the 
Confrontation Clause and hearsay may overlap, they are distinct concepts and 
objections grounded upon these principles incorporate separate analyses.") 
(citations omitted).

[17] 
See also Davis v. Washington, 547 U.S. 813, 821 (2006) ("It 
is the testimonial character of the statement that separates it from other 
hearsay that, while subject to traditional limitations upon hearsay evidence, is 
not subject to the Confrontation Clause."); Crawford, 541 U.S. at 68 
("Where nontestimonial hearsay is at issue, it is wholly consistent with the 
Framers' design to afford the States flexibility in their development of hearsay 
law--as does Roberts, and as would an approach that exempted such 
statements from Confrontation Clause scrutiny altogether.").

[18] 
Transcript of Proceedings at 26.

[19] 
Transcript of Proceedings at 24.

[20] 
Id. at 31.

[21] 
Id. at 25.

[22] 
Id.

[23] 
Id. at 26.

[24] 
Id. at 41-42.

[25] 
Id. at 42-43 (emphasis added).

[26] 
Transcript of Proceedings, Ex. 6.

[27] In 
stark contrast to the complete lack of rules for maintenance of the Intoxilyzer 
8000, the prescribed maintenance procedures for the Intoxilyzer 5000 
require:
(e) Maintenance. Maintenance shall be performed as follows on the 
above listed equipment at least once during each thirty (30) day period and not 
later than thirty (30) days since the last prior such maintenance, or after the 
testing of twenty five (25) subjects, whichever occurs first, by a person 
possessing a valid Breath Alcohol Analysis (Specialist) permit issued by the 
Board:
(1) A thorough inspection of the equipment for cleanliness and determination 
that it is in proper operating condition shall be performed.
(2) The reference ethyl alcohol solution in the alcoholic breath simulator 
device shall be replaced with new solution and one (1) or more verification 
analyses performed with the new solution. Each verification analysis shall be 
performed in accordance with the Operating Procedure(s) prescribed by the State 
Director of Tests for Alcohol and Drug Influence. The result of each such 
verification analysis must coincide with the corresponding vapor-alcohol 
concentration target value within plus or minus one-hundredths gram per two 
hundred and ten liters (± 0.01g/210 L).
(3) The administrative maintenance performed, shall include; results of said 
verification analyses, date of inspection, and a record of the inspection will 
be documented on the log of tests and maintenance record retained by the breath 
analysis instrument in digital form as prescribed and designated by the State 
Director of Tests for Alcohol and Drug Influence.
Okla. Admin. Code § 40:30-1-3(e). Although not binding on this Court, in 2007 
COCA held that the maintenance log for the Intoxilyzer 5000 that was offered 
into evidence was admissible under the public records exception to the hearsay 
doctrine because a state officer performed certain maintenance on the 
Intoxilyzer 5000 pursuant to his duties as a public official and recorded this 
fact in a record required to be kept by law. Clark v. State ex rel. 
Department of Public Safety, 2007 OK CIV APP 12, 153 P.3d 77. However, in the 
case before us, the machine at issue is an Intoxilyzer 8000, and DPS did not 
seek to admit a maintenance log for this particular Intoxilyzer 
8000.

[28] 
see Cornett v. Carr, 2013 OK 30, ¶ 14, 302 P.3d 769, 773 (citing Depuy 
v. Hoeme, 1989 OK 42, ¶ 10, 
775 P.2d 1339, 1343-1344) 
(explaining that a judgment stands as final when the time to appeal has expired, 
is impervious to reconsideration, and is binding on the 
parties).





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1974 OK CR 151, 525 P.2d 1359, WESTERMAN v. STATE
Discussed at Length 2011 OK CR 8, 248 P.3d 362, TAYLOR v. STATE
Discussed at Length
Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2007 OK CIV APP 12, 153 P.3d 77, CLARK v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed 2007 OK CIV APP 56, 164 P.3d 250, DERRICK v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1989 OK 42, 775 P.2d 1339, 60 OBJ 803, Depuy v. Hoeme
Discussed 1994 OK 119, 884 P.2d 538, 65 OBJ 3676, Weathers v. Fulgenzi
Discussed 2001 OK 90, 37 P.3d 841, 72 OBJ 3071, KERR v. CLARY
Discussed 1944 OK 366, 154 P.2d 939, 195 Okl. 89, HADLEY v. ROSS
Discussed 2008 OK 31, 183 P.3d 996, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed 2013 OK 30, 302 P.3d 769, CORNETT v. CARR
Discussed 2013 OK 98, 315 P.3d 989, HEDRICK v. COMMISSIONER OF DEPT. OF PUBLIC SAFETY
Cited 1984 OK 16, 680 P.2d 365, Smith v. State ex rel. Dept. of Public Safety
Discussed at Length 1984 OK 21, 681 P.2d 750, Appeal of Dungan
Discussed 1985 OK 65, 709 P.2d 1037, 56 OBJ 1819, W.D., Matter of
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 2801, Definitions
Cited 12 O.S. 2803, Hearsay Exceptions - Availability of Declarant Immaterial
Discussed at Length 12 O.S. 2902, Self-Authentication
Discussed at Length
Title 47. Motor Vehicles Cite
Name
Level 47 O.S. 6-211, Right of Appeal to Court
Discussed 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Cited