OSCN Found Document:ANDREWS v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 ANDREWS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2014 OK CIV APP 19
Case Number: 111756
Decided: 09/06/2013
Mandate Issued: 02/20/2014
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2014 OK CIV APP 19, __ P.3d __

TRAVIS W. ANDREWS, Plaintiff/Appellee,
v.
STATE OF OKLAHOMA ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.



APPEAL FROM THE DISTRICT COURT OF DELAWARE COUNTY, OKLAHOMA

HONORABLE ROBERT G. HANEY, TRIAL JUDGE



AFFIRMED



Josh D. Lee, Caitlin Bowers Towles, WARD LEE & COATS, P.L.C., Vinita, Oklahoma, for Plaintiff/Appellee
Mark E. Bright, ASSISTANT GENERAL COUNSEL, DEPARTMENT OF PUBLIC SAFETY, Oklahoma City, Oklahoma, for Defendant/Appellant




DEBORAH B. BARNES, VICE-CHIEF JUDGE:


¶1 Defendant/Appellant State of Oklahoma ex rel. Department of Public Safety (DPS) appeals the trial court's Order filed on April 10, 2013, denying its "motion to reconsider/vacate" the trial court's prior order. The trial court's prior order reversed DPS's implied consent revocation order revoking Plaintiff/Appellee Travis W. Andrews' (Andrews) driver's license for 180 days. Based on our review of the facts and applicable law, we affirm the trial court's Order denying DPS's "motion to reconsider/vacate."

BACKGROUND

¶2 In February 2012, DPS issued an Order of Revocation revoking Andrews' driver's license for a period of 180 days.[1] The Order of Revocation states, in part, as follows:



Your driving privilege is revoked effective 03-05-2012 for a period of 180 days. This action is required after receiving a law enforcement officer['s] affidavit of your arrest on 11-07-2011 and laboratory analysis showing your blood alcohol content to be 0.08 or more at the time of testing.
You may make a request in writing for an administrative hearing . . . .



¶3 A hearing was subsequently held before the hearing officer appointed by the Commissioner of Public Safety. The hearing officer sustained the Order of Revocation, finding, in pertinent part, as follows:



It is the opinion of the hearing officer that the licensee was arrested upon reasonable belief that he was operating or in actual physical control of a motor vehicle upon the public roads . . . while under the influence of alcohol . . ., and after being requested to do so and informed that his driver's license would be revoked should he have an alcohol concentration of 0.08 or more, took a test within two hours of the arrest in accordance with the existent Rules of the Board of Alcohol and Drug Influence and the result of such test was an alcohol concentration of 0.08 or more.

It is therefore ordered that the order of the Commissioner of Public Safety . . . is hereby sustained and the driving privilege of the licensee be revoked for a period of 180 days beginning 06 January 2013.[2]



¶4 On November 27, 2012, Andrews filed a petition in the district court appealing the revocation. The district court reviewed the case de novo, and a trial was held on January 23, 2013. At the trial, Oklahoma State Highway Patrol Trooper Bryan Heath Linn (Trooper Linn) testified that at about 10:15 p.m. on November 7, 2011, he arrived at the scene of a single-vehicle accident. The vehicle, driven by Andrews, had collided head on with a tree.[3] He testified that Andrews was the sole occupant of the car, and that Andrews admitted to being the driver of the vehicle at the time of the accident.

¶5 Trooper Linn testified Andrews "ha[d] an odor of alcohol."[4] He further testified Andrews' "speech was slurred," and "his eyes appeared very glassy and watery . . . ." Trooper Linn further testified Andrews immediately admitted he had been drinking alcohol before the accident. He testified Andrews "stated that he had just got[ten] off work," and "[t]hat he had stopped and bought a six pack of beer after work and had dr[iven] straight from there and was headed home, . . . whenever he had the collision that he had (sic) consumed the six pack of beer."[5] Trooper Linn again testified Andrews "admitted" to him at the scene of the accident "he had drunk a six pack of beer."[6] Trooper Linn testified he asked Andrews if he had consumed any alcohol after the accident and that Andrews stated he had not. Trooper Linn testified he "believed that [Andrews] was under the influence of alcohol" and placed him under arrest.

¶6 Andrews had an injury to his head, was bleeding, and was placed in an ambulance. Trooper Linn testified he did not know the extent of Andrews' injury and, because of Andrews' medical condition, Trooper Linn did not perform any field sobriety or breath tests on him.[7]

¶7 After placing Andrews under arrest "inside the ambulance,"[8] Trooper Linn advised Andrews of the "implied consent test" and informed him that it would be a blood test. Trooper Linn testified that Andrews did not ask him any questions and "said that he would take the test."[9] At 11:25 p.m., and upon the request of Trooper Linn, Emergency Medical Technician/Paramedic Heath Barnwell (the EMT paramedic)[10] withdrew four vials of Andrews' blood using a blood kit provided by Trooper Linn.[11]

¶8 After the EMT paramedic withdrew Andrews' blood, Trooper Linn sealed the blood kit and mailed it to an Oklahoma State Bureau of Investigation (OSBI) lab for testing. The OSBI's analysis of the blood revealed a blood alcohol content (BAC) of "0.16 g/100mL."[12]

¶9 Andrews' petition in the district court alleged that the EMT paramedic was not authorized under Oklahoma's implied consent laws to withdraw blood for determining the level of intoxicants in his blood.[13] In support of his petition, Andrews filed a "Brief in Support of Objection to Admissibility of Blood Test," in which he contended that paramedics are not authorized by Oklahoma's implied consent laws, 47 O.S.2011 §§ 752 & 759, to withdraw blood for the purpose of determining BAC.[14]

¶10 In its order filed on March 13, 2013, the trial court found that the EMT paramedic was not an authorized person to withdraw blood under "current law." Based upon this finding, the trial court set aside the DPS revocation order and reinstated Andrews' driver's license.

¶11 DPS filed a "motion to reconsider/vacate" the trial court's order. In its Order filed on April 10, 2013, the trial court denied DPS's motion. From this Order, DPS appeals.

STANDARD OF REVIEW

¶12 The district court reviewed this case de novo. "Appeals from implied consent revocation orders are heard de novo in the district court, with the 'trial de novo' being a trial of the entire case anew, both on the law and on the facts." Appeal of Dungan, 1984 OK 21, ¶ 7, 681 P.2d 750, 752 (citation omitted). "On appeal, we review the district court's order in an implied consent revocation to determine whether it lacks sufficient evidentiary foundation or is erroneous as a matter of law." Brockman v. State ex rel. Okla. Dep't of Pub. Safety, 2013 OK CIV APP 48, ¶ 5, 301 P.3d 896, 898 (citation omitted). Because the facts are undisputed, we are presented solely with a question of law regarding the application of certain statutory provisions. "Matters submitted on stipulated facts or which present questions of law are reviewed de novo, . . . meaning they are subject to an appellate court's plenary, independent, and nondeferential reexamination." State ex rel. Dep't of Pub. Safety v. Kelley, 2007 OK CIV APP 99, ¶ 7, 172 P.3d 231, 234 (citations omitted). See also Justus v. State ex rel. Dep't of Pub. Safety, 2002 OK 46, ¶ 3, 61 P.3d 888, 889 ("In this case, since the parties entered into stipulated facts at the district court level, the issue presented on certiorari is a pure question of the application of a statute to the undisputed facts. This presents a question of law that we review de novo.").



The primary goal of statutory construction is to determine legislative intent. It is presumed that the Legislature has expressed its intent in a statute and that it intended what is so expressed. A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning.



Id. ¶ 4, 61 P.3d at 889 (citations and quotation marks omitted).

ANALYSIS

¶13 Under the circumstances presented in this case, both a sworn report from a law enforcement officer and a valid and admissible test showing an illegal intoxication level were required in order to revoke Andrews' driver's license. Title 47 O.S.2011 § 6-205.1 provides, in pertinent part, as follows:



A. The driving privilege of a person who is convicted of any offense as provided in paragraph 2 of subsection A of Section 6-205 of this title, or a person who has refused to submit to a test or tests as provided in Section 753 of this title, or a person whose alcohol concentration is subject to the provisions of Section 754 of this title, shall be revoked or denied by the Department of Public Safety for the following period, as applicable:

1. The first license revocation pursuant to . . . Section . . . 754 of this title shall be for one hundred eighty (180) days, which may be modified . . . .



(Emphasis added.) Title 47 O.S.2011 § 754(C) provides, in pertinent part, as follows:



[I]f the arrested person is twenty-one (21) years of age or older, a blood or breath alcohol concentration of eight-hundredths (0.08) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law, the Department shall revoke or deny the driving privilege of the arrested person for a period as provided by Section 6-205.1 of this title.



¶14 Because there is no indication in the record that Andrews was convicted of an offense for driving under the influence of alcohol, and because Andrews did not refuse to submit to a test to determine his BAC, the propriety of the revocation of Andrews' driver's license for 180 days is dependent upon the following: "a blood or breath alcohol concentration of eight-hundredths (0.08) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person" had been driving under the influence. Trooper Linn completed an affidavit on the date of the accident in which he stated: "[Andrews] was involved in a one veh[icle] collision where he . . . struck [a] tree."[15] He further stated: "Strong odor of alcohol, red glassy eyes, slurred speech, admitted to drinking 6-pack of beer after getting off of work a short time prior to collision. Stated he had not dr[u]nk any alcohol after collision." Trooper Linn's affidavit is consistent with his testimony at the trial de novo, and we conclude Trooper Linn's affidavit satisfies the requirement of a sworn report from a law enforcement officer pursuant to § 754(C).

¶15 However, regarding the validity and admissibility of the blood test administered at the scene of the accident, although it revealed a BAC of more than 0.08, the test was administered by an EMT paramedic. Title 47 O.S.2011 § 752(A) sets forth the persons authorized to withdraw blood for the purpose of having a determination made of its BAC or concentration of other intoxicating substance. Section 752(A) provides:



Only a licensed medical doctor, licensed osteopathic physician, licensed chiropractic physician, registered nurse, licensed practical nurse, physician's assistant, certified by the State Board of Medical Licensure and Supervision, an employee of a hospital or other health care facility authorized by the hospital or health care facility to withdraw blood, or other qualified person authorized by the Board of Tests for Alcohol and Drug Influence acting at the request of a law enforcement officer may withdraw blood for purpose of having a determination made of its concentration of alcohol or the presence or concentration of other intoxicating substance. Only qualified persons authorized by the Board may collect breath, saliva or urine, or administer tests of breath under the provisions of this title.



(Emphasis added.) The Legislature clearly intended to authorize "[o]nly" those persons listed, in addition to other qualified persons authorized by the Board of Tests for Alcohol and Drug Influence (the Board of Tests), to withdraw blood for the purpose of determining BAC and other intoxicants. It is undisputed that the EMT paramedic in this case is not among those listed in § 752(A). Furthermore, the EMT paramedic in this case is not "an employee of a hospital or other health care facility . . . ."

¶16 The EMT paramedic was employed at the time of the accident by the City of Jay's ambulance service. Although the ambulance service transports patients to health care facilities, we agree with Andrews that the ambulance service in this case is not itself a "hospital or other health care facility" as intended by § 752(A). Pursuant to the rule of ejusdem generis, the general phrase "other health care facility" includes only those health care facilities of the same class as the specifically listed type of health care facility, "hospital." Ejusdem generis is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary (9th ed. 2009). See also State ex rel. Comm'rs of Land Office v. Butler, 1987 OK 123, ¶ 8, 753 P.2d 1334, 1336 (The rule of ejusdem generis "gives guidance to the ordinary insight that when specific words are followed by general words those specific words restrict the meaning of the general."). We conclude that the City of Jay's ambulance service, which serves primarily to transport patients to hospitals and other health care facilities, does not fall within the restricted meaning of "other health care facility" as intended by § 752(A).[16] Therefore, the EMT paramedic is not "an employee of a hospital or other health care facility." Consequently, we conclude the EMT paramedic does not fall within any of the persons specifically authorized by the Legislature in § 752(A) to withdraw blood for the purpose of determining BAC and other intoxicants.

¶17 Section 752(A) also empowers the Board of Tests to authorize other qualified persons to withdraw blood for the purpose of determining toxicity. "The Legislature specifically authorized [the Board of Tests] to authorize qualified persons to withdraw blood for the purpose of having a determination made of its concentration of alcohol or the presence or concentration of other intoxicating substance." Bemo v. State, 2013 OK CR 4, ¶ 6, 298 P.3d 1190, 1191 (citing 47 O.S.2011 § 752(A)). In Bemo, the Oklahoma Court of Criminal Appeals stated that although the Board of Tests had not enacted a rule specifically authorizing EMT paramedics to withdraw blood for this purpose, the Board of Tests had "promulgated Action No. 01-1, which provides that EMT paramedics licensed with the National Registry and the State Health Department are authorized to withdraw blood . . . ." Id. ¶ 6, 298 P.3d at 1192. The Bemo Court also "note[d] that prior to the Board of Tests promulgation of Action No. 01-1, the State Health Department authorized licensed EMT paramedics to perform venipuncture to obtain blood samples." Id. (citation omitted). Accordingly, the Bemo Court



determine[d] that an EMT paramedic licensed with the National Registry and the State Health Department is authorized under state law to withdraw blood for the purpose of having a determination made of its concentration of alcohol or the presence or concentration of other intoxicating substance. As the individual that withdrew Appellant's blood was an EMT paramedic licensed with the National Registry and the State Health Department, we find no error occurred in the admission of Appellant's blood test results.



Id.

¶18 We disagree with the conclusion reached in Bemo because controlling Oklahoma Supreme Court authority regarding statutory interpretation leads, in our view, to a different conclusion. At the time of the accident, there was no statute or administrative rule authorizing paramedics to withdraw blood for the purpose of determining BAC. In Action No. 01-1, referenced in Bemo, the Board of Tests purported to authorize certain EMTs "to withdraw blood in the performance of their duties . . . ."[17] Action No. 01-1 states it took effect "on and after" February 1, 2001.

¶19 However, Action No. 01-1 is not a rule of the Oklahoma Administrative Code. Moreover, a rule authorizing certain "EMT personnel" to withdraw blood for the purpose of determining BAC and other intoxicants is currently only a proposed rule that has yet to be enacted. In a notice of rulemaking intent published in the Oklahoma Register on February 15, 2012, the Board of Tests proposed a



rule change [that] would authorize EMT personnel certified as intermediate (I), advanced (A) or paramedic (P) by the State of Oklahoma to withdraw blood samples as "other qualified persons authorized by [the Board of Tests]" as referenced in 47 O.S. § 752(A). The need for the rule change is created by the conflict among the state's district courts whether board actions are authorized by 47 O.S. § 759. The rule is intended to clarify what persons are authorized by [the Board of Tests] to withdraw blood samples for testing drivers' blood for alcohol and other intoxicants.[18]



The notice of rulemaking intent provides for a comment period, the possibility of a public hearing, and a request for comment from business entities. It further states that "a rule impact statement is being prepared and will be available for review after February 15, 2012 . . . ." Pursuant to the Board of Tests' own notice of rulemaking intent, the proposed rule was clearly not in effect at the time of the accident in November 2011.

¶20 Title 47 O.S.2011 § 759(B) provides, in pertinent part, that "[c]ollection . . . of a person's blood . . ., to be considered valid and admissible in evidence, whether performed by or at the direction of a law enforcement officer or at the request of the tested person, shall have been performed in compliance with the rules adopted by [the Board of Tests] . . . ." Administrative rules promulgated by agencies, boards, and commissions pursuant to authority delegated to them by the Legislature "are valid expressions of lawmaking powers having the force and effect of law." Walker v. Grp. Health Servs., Inc., 2001 OK 2, ¶ 27, 37 P.3d 749, 759 (footnote omitted). However, "[n]o agency rule is valid or effective against any person or party, or may be invoked by the agency for any purpose, until it has been promulgated as required in the Administrative Procedures Act." 75 O.S.2011 § 308.2(A).

¶21 Although the State Health Department promulgated a rule authorizing licensed EMT paramedics to perform venipuncture to obtain blood samples, the Board of Tests has not promulgated a rule authorizing paramedics to withdraw blood for the purpose of determining intoxication. Up to the time of this incident, the rule in effect did not authorize EMT paramedics to withdraw blood for the purpose of determining BAC. The rule states:



Persons authorized to withdraw blood

(a) Authority to withdraw blood. Licensed medical doctors, licensed osteopathic physicians, registered nurses, licensed practical nurses, and other persons designated by law (47 O.S., Section 752) are authorized to withdraw blood for the purpose of determining the concentration of alcohol or other intoxicating substance therein, when acting at the request of a law enforcement officer or of an arrested person under the provisions of Title 47, Oklahoma Statutes.

(b) Permits. The current and valid license, registration, practice certificate or other official document entitling its holder to engage in the practice of the respective profession and issued by the respective Oklahoma healing arts licensing body to any qualified practitioner enumerated above is deemed by the Board of Tests . . . to be a valid Permit to Withdraw Blood under the provisions of Title 47, Oklahoma Statutes.



Okla. Admin. Code § 40:10-9-1 (2012).

¶22 Because a rule was not enacted (or amended) by the Board of Tests at the time of the accident authorizing the EMT paramedic to withdraw blood for the purpose of determining BAC, and because the EMT paramedic does not fall within those persons specifically listed by the Legislature in § 752(A) to withdraw blood for this purpose, we conclude the blood withdrawn by the EMT paramedic cannot be considered valid and admissible. Absent a valid and admissible test showing Andrews had "a blood or breath alcohol concentration of eight-hundredths (0.08) or more," the revocation of Andrews' driver's license on this basis was improper. Therefore, we affirm the trial court's Order denying DPS's "motion to reconsider/vacate" the trial court's prior order reversing the implied consent revocation order.

CONCLUSION

¶23 Based on our review of the record and applicable law, we affirm the trial court's Order denying DPS's "motion to reconsider/vacate" the trial court's prior order reversing the implied consent revocation order.


¶24 AFFIRMED.



WISEMAN, J., and RAPP, J. (sitting by designation), concur.



FOOTNOTES


[1] Tr. at Ex. 5.



[2] Tr. at Ex. 1.



[3] Tr. at 16.



[4] Tr. at 18.



[5] Tr. at 14.



[6] Tr. at 18.



[7] Tr. at 18, 21.



[8] Tr. at 19.



[9] Tr. at 21.



[10] Barnwell was an Emergency Medical Technician, Paramedic License Level, employed by the City of Jay. Tr. at 7.



[11] Tr. at 23.



[12] Tr. at Ex. 4.



[13] R. at 1-3.



[14] Andrews did not challenge that a paramedic is authorized to withdraw blood under Oklahoma law for other purposes, nor that a paramedic is qualified to withdraw blood. His only contention concerned the legal capacity of a paramedic to withdraw blood "for implied consent purposes" in Oklahoma. R. at 104.



[15] Tr. at Ex. 2.



[16] We note that "health care facility," as defined in Okla. Admin. Code § 310:555-1-2 (2004), includes only medical facilities "to which a source patient is transported . . . ."



[17] We note that apart from being an action by the Board of Tests, Action No. 01-1 does not specifically state that EMTs may withdraw blood for the purpose of determining BAC and/or other intoxicants.



[18] This notice of rulemaking intent was published in 29 Okla. Reg. 289-322 (Feb. 15, 2012).










 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 2013 OK CR 4, 298 P.3d 1190, BEMO v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2007 OK CIV APP 99, 172 P.3d 231, STATE ex rel. DEPT. OF PUBLIC SAFETY v. KELLEY
Discussed 2013 OK CIV APP 48, 301 P.3d 896, BROCKMAN v. STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1987 OK 123, 753 P.2d 1334, 58 OBJ 3412, State ex rel. Com'rs of Land Office v. Butler
Discussed 2001 OK 2, 37 P.3d 749, 72 OBJ 147, WALKER v. GROUP HEALTH SERVICES, INC.
Discussed 2002 OK 46, 61 P.3d 888, JUSTUS v. STATE EX. REL. DEPT. OF PUBLIC SAFETY
Discussed 1984 OK 21, 681 P.2d 750, Appeal of Dungan
Discussed
Title 47. Motor Vehicles Cite
Name
Level 47 O.S. 752, Procedure for Blood Tests - Authorization - Liability for Withdrawal - Reports
Discussed at Length 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Cited 47 O.S. 759, Board of Tests for Alcohol and Drug Influence - Members - Authority - Rules - Revolving Fund
Discussed 47 O.S. 6-205.1, Duration of Revocation of Driver License or Driving Privilege
Discussed
Title 75. Statutes and Reports Cite
Name
Level 75 O.S. 308.2, Effect of Promulgated Rule
Cited