OSCN Found Document:TRUSTY v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 TRUSTY v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2016 OK 94
Case Number: 114208
Decided: 09/20/2016
As Corrected: October 6, 2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 94, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



KYLE TRUSTY, Plaintiff-Appellee,
v.
STATE OF OKLAHOMA, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant-Appellant.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, STATE OF OKLAHOMA, 
HONORABLE JAMES B. CROY

¶0 Kyle Trusty was arrested for driving under the influence after crashing his vehicle. Mr. Trusty was taken to the hospital where he consented to a blood test to determine his blood alcohol content. The blood was drawn by a nurse at the hospital, and the arresting officer sent the sample to the police lab. Upon receiving the results, which revealed a .206 blood alcohol content, the Department of Public Safety revoked Mr. Trusty's driver's license. Mr. Trusty appealed to the District Court of Oklahoma County. The trial court vacated the revocation of Mr. Trusty's driver's license because DPS did not call the nurse who drew the blood as a witness to establish that the withdrawal was done in compliance with rules and regulations of the Board of Tests for Alcohol and Drug Influence. We retained the cause and hold that DPS bears the burden of showing compliance with such regulatory requirements for drawing blood in order to use the test results against a driver.

AFFIRMED

Joanne Horn, Assistant General Counsel, Department of Public Safety, Oklahoma City, Oklahoma, Attorney for Defendant-Appellant
Charles L. Sifers, Oklahoma City, Oklahoma, Attorney for Plaintiff-Appellee


PER CURIAM
¶1 We retained this cause to address whether the Department of Public Safety must prove compliance with regulatory requirements for the collection of blood for a blood alcohol content test to be used against a driver in a driver's license revocation proceeding. We hold that DPS bears the burden of showing compliance with regulatory requirements for drawing blood under the implied consent statutory scheme in order to use the test results against a driver.
FACTS
¶2 On February 1, 2014, Oklahoma City Police Sergeant Eric Helt responded to a call for a welfare check involving a single-car accident at approximately 4:00 a.m. near the intersection of Oklahoma and Reno in Oklahoma City. The Plaintiff-Appellee Kyle Trusty's car had crashed into playground equipment. A nearby witness to the accident, a medical doctor, observed him slumped over the steering wheel and observed that he was not moving and that smoke was coming from the front of the car. She and others at the scene were able to open the door and help him out of the car. He was disoriented and passed out in an area of grass. In the doctor's opinion, he was intoxicated. When he arrived, Sergeant Helt found Mr. Trusty lying in the grass. Sergeant Helt observed Mr. Trusty's unresponsive condition and smelled alcohol on his person. He also observed a still cool, opened, can of beer in the passenger floor board of Mr. Trusty's car. Due to his condition, Mr. Trusty was transported to the emergency room by EMSA.
¶3 While in the emergency room, Mr. Trusty became more responsive, although his speech was slurred at first and his breath smelled like alcohol. Sergeant Helt placed Mr. Trusty under arrest for driving under the influence. Sergeant Helt read him the implied consent test and Mr. Trusty consented[1] to a blood test for blood alcohol content. Sergeant Helt informed Mr. Trusty that if his blood alcohol level were .08 or more, his driver's license would be revoked. According to Sergeant Helt, Mr. Trusty's condition prevented him from leaving the hospital to do a breath analysis.
¶4 Sergeant Helt used a sealed blood testing kit, number 133285, provided by the Oklahoma City Police Department. He broke the seal on the kit and provided it to a nurse at the hospital. Sergeant Helt observed the blood draw and the person who signed the affidavit was Tam Nguyen Tran, the nurse who drew the blood. After the blood was drawn, three vials were placed back into the kit, at which time Sergeant Helt sealed the kit and placed it in the refrigerated drop in the OCPD property room. The kit was delivered by the property officer to the OCPD toxicology lab in a sealed condition and the blood was tested. The test results showed an average of .206 blood alcohol content.
¶5 DPS held a hearing on March 30, 2015, and and revoked Mr. Trusty's driving privileges for a period of one year. Mr. Trusty appealed the order revoking his driver's license to the Oklahoma County District Court on May 4, 2015. The trial court held a hearing on June 22, 2015. At the June 22, 2015 hearing, several witnesses were called including: Sergeant Helt; Dr. Jamie Laughy, the witness who pulled Mr. Trusty out of his car; Edward Grimes, another patrolman who investigated the accident; Matthew Scott, the forensic chemist who tested the blood at the OCPD lab; and Kevin Behrens, the Director of the Board of Tests for Alcohol and Drug Influence. The nurse, Tam Nguyen Tran, who drew the blood, was not called as a witness to verify that the tests were done in compliance with the mandated regulations for drawing blood.[2]
¶6 On July 15, 2015, the trial court filed an order in which it determined that no evidence was presented by DPS showing compliance with the regulatory requirements attendant to the withdrawal of blood for the implied consent test. The court found:


The nurse performing the blood draw in this case did not testify. Only Sergeant Helt testified, stating that he was present while the blood was being drawn. However, he did not offer any basis for the Court to find that he possessed the necessary medical training to testify to the following facts:
1. That the blood was drawn in accordance with accepted medical practices.
2. That Trusty did not suffer from hemophilia.
3. That Trusty was not taking anticoagulant medications.
4. That the blood was withdrawn by venipuncture.
5. That the puncture site had been properly prepared.
6. That necessary precautions to maintain asepsis and avoid contamination of the specimens.
7. That the puncture site preparation was performed without the use of alcohol or other volatile organic disinfectant.[3]
Accordingly, the court vacated the driver's license revocation and exonerated the bond.
¶7 DPS appealed on August 14, 2015, arguing that the trial court abused its discretion in setting aside Mr. Trusty's driver's license revocation because its dismissal was based only on the fact that the nurse did not testify as to compliance with regulatory requirements for the withdrawal of blood. The cause was retained by the Court on October 19, 2015.
DPS BEARS THE BURDEN OF SHOWING COMPLIANCE WITH
REGULATORY REQUIREMENTS FOR DRAWING BLOOD IN ORDER TO
USE THE TEST RESULTS AGAINST A DRIVER
¶8 Any person who operates a motor vehicle in Oklahoma is deemed to have consented to blood or breath tests in the event they are arrested for driving under the influence or while intoxicated with alcohol or drugs--otherwise known as implied consent.[4] When a law enforcement officer has determined that the blood alcohol content of an individual is to be tested, the test shall only be performed by certain medical personnel as provided by 47 O.S. 2011 § 752, which includes registered nurses.[5]
¶9 The Board of Tests for Alcohol and Drug Influence was created to prescribe uniform standards and conditions for and to approve satisfactory methods, procedures, techniques, devices, equipment, and records for tests and analysis performed under the implied consent laws.[6] To be admissible in evidence, tests administered under the implied consent laws must have been administered or performed in accordance with the rules and regulations of the Board.[7] DPS argues that substantial compliance with the rules and regulations for drawing blood is necessary, but no direct testimony from the person who actually drew the blood is ever required. Rather, all that is required is that DPS show by a preponderance of the evidence that Mr. Trusty was driving drunk. Mr. Trusty argues that compliance with the rules and regulations for drawing blood in this type of case may not be presumed or circumstantially shown, but must be directly shown by DPS in order to use the test results to establish its case.
¶10 The regulation of motor vehicles on the highway is a legitimate exercise of the police powers of the state, pursuant to which the state may make all reasonable laws, rules, and regulations for the safety and protection of the public.[8] Pursuant to a valid arrest, a police officer has the right to request that a driver of a motor vehicle submit to a chemical or breath test for blood alcohol.[9] The statutory framework for such tests to determine whether one is driving while intoxicated is known as the implied consent law.[10] Under the implied consent statutes, DPS only has the power to revoke a driver's license in three instances:


1) upon receipt of a blood or breath test and a sworn report from a law enforcement officer averring that he or she had reasonable grounds to believe the driver was driving under the influence;[11]
2) upon receipt of a sworn report from law enforcement averring that the person refused to submit to the test and that the officer had reasonable grounds to believe the driver was driving under the influence;[12] or
3) upon receipt of "any person's record of conviction of driving while impaired."[13]
¶11 "The quintessence of the consent law is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his blood." Robertson v. State ex rel. Lester, 1972 OK 126, ¶ 13, 501 P.2d 1099, 1102 (emphasis added). Since 1967, the Legislature has allowed for the imposition of both a criminal and a civil sanction based on a chemical test reflecting evidence of the alcohol concentration in the blood or breath.[14] We said in Robertson:


'* * * Chemical tests eliminate mistakes from objective observation alone, and they disclose the truth when a driver claims that he has drunk only a little and could not be intoxicated. They protect the person who has not been drinking to excess but has an accident and has the odor of alcohol on his breath. They save a person from drunken driving charge when his conduct creates the appearance of intoxication but who actually is suffering from other causes over which he had no control.
Robertson, 1972 OK 126, ¶ 11, 501 P.2d at 1102 (internal citations omitted).
¶12 In an administrative driver's license revocation proceeding the focus is "on the due process standards that are built into the regulatory scheme" under the implied consent statutes. Id. "The Oklahoma Implied Consent Law conforms to the constitutional due process requirement by providing notice and opportunity for hearing, providing for administrative hearing subject to judicial review and applying to all licensed motorists in an identical manner." Robertson, 1972 OK 126, ¶ 10, 501 P.2d at 1102. A person's "claim to a driver's license is indeed a protectable property interest that may not be terminated without due process guaranteed by the Fourteenth Amendment." Price v. Reed, 1986 OK 43, ¶ 11, 725 P.2d 1254, 1260.
¶13 Under this administrative scheme, two statutory prerequisites are fundamental to DPS' power to revoke a license: 1) a blood or breath test report or the driver's refusal of such a test; and 2) the officer's sworn report that he or she had reasonable grounds to believe the driver was driving under the influence. See 47 O.S. 2011 §§ 753 & 754(C); See also Chase v. State ex rel. Dep't of Pub. Safety, 1990 OK 78, ¶ 4, 795 P.2d 1048, 1049.[15] Only upon receipt of both statutory prerequisites does DPS have the power to "revoke or deny the driving privilege of the arrested person."[16]
¶14 At the DPS administrative revocation hearing,[17] DPS bears the burden of proving that "the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest."[18] If the revocation of the driver's license is based upon a breath or blood test result, DPS must also prove:


a. if timely requested by the person, the person was not denied a breath or blood test,
b. the specimen was obtained from the person within two (2) hours of the arrest of the person,
c. the person, if under twenty-one (21) years of age, was advised that driving privileges would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,
d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more, and
e. the test result in fact reflects the alcohol concentration.[19]
Because the test results are required to be done in compliance with the Board's regulations and procedures, the scope of the hearing must also necessarily include that compliance be shown for test results to be admissible into evidence.[20] Compliance with the testing regulations is what renders the blood or breath test admissible, and the results of the test are what make prima facie evidence that the person was under the influence.[21]
¶15 The applicable statutory framework requires compliance with the rules adopted by the Board. DPS is the entity charged with proving compliance with the regulatory scheme. The Oklahoma Constitution, Article 5, vests the Legislature with the power to establish agencies and to designate agency functions.[22] The Legislature delegates rule-making authority to facilitate administration of legislative policy and such delegation is intended to eliminate the necessity of establishing every administrative aspect of general public policy by legislation.[23] Administrative agencies create rules which are binding similar to a statute and are only created within legislatively granted authority and approval. Such rules are necessary in order to make a statutory scheme fully operative.[24]
¶16 Clearly, the Legislative and Board directive is that DPS show whomever withdrew blood for a blood alcohol test complied with the Board's regulatory requirements in order for the test results to be admitted as proof of blood alcohol level of the driver. Here, this was not done. There was no testimony or other evidence regarding the proper procedures utilized to draw the blood. This Court will not reverse or disturb a finding of a lower court if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support its findings.[25] Consequently, we must affirm the trial court's determination that DPS did not show that blood was drawn in accordance of the rules and regulations of the Board. DPS cannot prove it properly revoked Mr. Trusty's driver's license under the implied consent statutes.[26]
CONCLUSION
¶17 A police officer has the right to request that a driver of a motor vehicle submit to a chemical or breath test for blood alcohol. When a law enforcement officer has determined that the blood alcohol content of an individual is to be tested, the test shall only be performed by certain medical personnel, following statutory and regulatory mandated procedures. The revocation in this case is based on a chemical test, not the refusal of the operator to submit to such a test. In this case, where DPS relied on a blood test to substantiate the revocation, the trial court correctly found that DPS failed to prove that the blood test performed on Mr. Trusty was performed in accordance with the rules and regulations of the Board under 47 O.S. 2011 § 752(H) and OAC § 4020-1-3 (2014), making the blood test inadmissible. The Legislative and Board directive requires DPS show compliance with the regulatory requirements for drawing blood in order for the test results to be admitted as proof of blood alcohol level of the driver. Without an admissible blood test, DPS cannot prove the statutory requirements of § 754(F)(1), and there is no evidence DPS could present on remand to cure these evidentiary defects.

AFFIRMED

¶18 Reif, C.J., Combs, V.C.J., Watt, Colbert, Gurich, JJ., concur.

¶19 Kauger (by separate writing), Winchester, Edmondson, Taylor, JJ.,
concur in part and dissent in part.

FOOTNOTES

[1] The implied consent test request utilized by the Oklahoma City Police department is included in the record as Exhibit No. 3, and it provides:
1. You have been arrested and you are requested to submit to a test or tests to determine the presence and/or concentration of intoxicants in your body.
2. The state's test will be a [insert ONE word "breath" OR the word "blood"] test. If a blood test is performed, it will be done by approved medical personnel.
3. Once you complete the state's test, you may have an additional test at your own expense, provided that a sufficient quantity of any specimen obtained shall be available to the state for testing.
4. You are not entitled to consult with an attorney prior to making your decision whether or not to submit to the state's tests.
5. You may refuse the state's test, but as a consequence your driver's license will be revoked or denied by the Department of Public Safety.
6. If you are age 21 years or older and the test result is 0.08 or more alcohol concentration, your driver's license will be revoked or denied by the Department of Public Safety. If you are under age 21 and the test result is 0.02 or more alcohol concentration, your driver's license will be revoked or denied by the Department of Public Safety.
7. If your driver's license is revoked or denied by the Department of Public Safety, you may be required to have an ignition interlock installed.
8. Will you take the state's test?
Transcript of Proceedings, Ex. 3 (June 22, 2015).

[2] The regulation for the collection, transfer, and retention of specimens of blood is found in the Oklahoma Administrative Code, 40: 20-1-3, and it provides in part:
(a) Withdrawal and collection of blood. Withdrawal and collection of specimens of blood obtained from living human subjects under the provisions of Title 47 and Title 3 and Title 63, Oklahoma Statutes shall be performed as set forth in this Section. The entire process shall be carried out with full regard for the health and safety of the tested persons, and so as to maintain properly the identity, integrity, and composition of such blood specimens.
(1) Collection of blood specimens - general conditions.
(A) Blood shall be withdrawn in accordance with accepted medical practices, in an appropriate hospital or medical or clinical environment, and by persons authorized by Title 47, Section 752 of the Oklahoma Statutes, to withdraw blood.
(B) No blood shall be knowingly withdrawn from any person with hemophilia or from any person who is taking anticoagulant medication(s) under the direction of a licensed healing arts practitioner.
(2) Procedures and techniques, precautions.
(A) Blood shall be withdrawn by venipuncture, after appropriate preparation of the puncture site(s), and with necessary precautions to maintain asepsis and avoid contamination of the specimens. Puncture site preparation and skin cleansing shall be performed without the use of alcohol or other volatile organic disinfectant.
(B) All blood specimens shall be collected directly in or immediately deposited into suitable clean, sterile, dry containers with inert closures, which contain adequate and appropriate anticoagulant(s) and preservative(s) in accordance with recognized procedural standards.
(C) All disposable materials, supplies, and paraphernalia shall not be reused for the withdrawal and collection or storage of blood specimens. All such materials, supplies, and paraphernalia other than required records or those required to be stored or retained or forwarded for evidentiary or other reasonable purposes shall be safely disposed of as soon as practicable after use. All materials, supplies, and paraphernalia with which the tested subject will or may come into physical contact shall be stored, handled, and used in a properly safe and sanitary manner.
(D) Each tube or other vessel containing a blood specimen shall be placed into a sealed envelope or other suitable sealed container or enclosure, approved by the State Director of Tests for Alcohol and Drug Influence, and bearing or containing at least the following information:
(i) Full name of the subject from whom the blood specimen was obtained
(ii) Date, time, and location where the blood specimen was obtained
(iii) Name of the law enforcement agency (and unit thereof, if needed for further identification) responsible for obtaining and processing the blood specimen
(iv) Legible signature and title of the qualified person who withdrew the blood specimen. . . .
Okla. Admin. Code § 40:20-1-3 (2014).

[3] Journal Entry at 3 (July 15, 2015).

[4] Title 47 O.S. 2011 § 751 provides in part:
A. 1. Any person who operates a motor vehicle upon the public roads, highways, streets, turnpikes or other public place or upon any private road, street, alley or lane which provides access to one or more single or multi-family dwellings within this state shall be deemed to have given consent to a test or tests of such person's blood or breath, for the purpose of determining the alcohol concentration as defined in Section 756 of this title, and such person's blood, saliva or urine for determining the presence or concentration of any other intoxicating substance therein as defined in this section, if arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place or upon any private road, street, alley or lane which provides access to one or more single or multi-family dwellings while under the influence of alcohol or other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance, or if the person is involved in a traffic accident that resulted in the immediate death or serious injury of any person and is removed from the scene of the accident to a hospital or other health care facility outside the State of Oklahoma before a law enforcement officer can effect an arrest. . . .

[5] Title 47 O.S. 2011 § 752 provides in part:
A. Only a licensed medical doctor, licensed osteopathic physician, licensed chiropractic physician, registered nurse, licensed practical nurse, physician's assistant, certified by the State Board of Medical Licensure and Supervision, an employee of a hospital or other health care facility authorized by the hospital or health care facility to withdraw blood, or other qualified person authorized by the Board of Tests for Alcohol and Drug Influence acting at the request of a law enforcement officer may withdraw blood for purpose of having a determination made of its concentration of alcohol or the presence or concentration of other intoxicating substance. Only qualified persons authorized by the Board may collect breath, saliva or urine, or administer tests of breath under the provisions of this title. . . .

[6] See 47 O.S. Supp. 2015 § 759.

[7] Title 47 O.S. 2011 § 752 provides in part:
H. Tests of blood or breath for the purpose of determining the alcohol concentration thereof, and tests of blood, saliva or urine for the purpose of determining the presence or concentration of any other intoxicating substance therein, under the provisions of this title, whether administered by or at the direction of a law enforcement officer or administered independently, at the option of the tested person, on the excess specimen of such person's blood, breath, saliva or urine, to be considered valid and admissible in evidence under the provisions of this title, shall have been administered or performed in accordance with the rules and regulations of the Board, or performed by a laboratory that is exempt from the Board rules pursuant to Section 759 of this title. . . .

[8] Tapp v. Perciful, 2005 OK 49, ¶ 21, 120 P.3d 480, 483; Harkrider v. Posey, 2000 OK 94 ¶ 14, 24 P.2d 821, 828.

[9] White v. Okla. Dep't of Pub. Safety, 1980 OK 21, ¶ 6, 606 P.2d 1131, 1132.

[10] 47 O.S. 2011 §§ 751-761.

[11] 47 O.S. 2011 § 754(C).

[12] 47 O.S. 2011 § 753.

[13] 47 O.S. 2011 § 761. However, DPS "shall not suspend such privilege pursuant to this subsection if said person's driving privilege has been revoked based upon a test result or test refusal pursuant to Section 753 or Section 754 of this title arising from the same circumstances which resulted in the conviction." Id.

[14] 1967 Okla. Sess. 135.

[15] Upon a blood or breath test reflecting an alcohol concentration over the legal limit, or upon refusal of such, a driver's license stands revoked. The driver's privilege is forfeited, the license is seized, and the driver is issued a receipt which acts as a temporary license for 30 days. 47 O.S. 2011 § 754(A)-(B).

[16]See 47 O.S. 2011 § 754(C). In 1990, in Chase v. State ex rel. Dep't of Pub. Safety, 1990 OK 78, ¶ 4, 795 P.2d 1048, 1049, this Court, in an opinion by Justice Opala, specifically noted that "[t]wo statutory prerequisites" were required in order for DPS to properly revoke a driver's license--"a written report that the driver's breath test showed an alcohol concentration of a least 0.10" (now .08) and "the enforcement officer's sworn report 'that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads . . . while under the influence of alcohol.'" In that case, the Court found that the sworn officer's affidavit was absent from the record, and as such, there was a "patent deficiency in the statutorily required DPS material." Id., ¶ 5, 795 P.2d at 1050. Such absence made "the Department's revocation order vulnerable to invalidation, on timely appeal, for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested." Id.

[17] If a driver is unsatisfied with the administrative ruling after the hearing, he or she may appeal the administrative order to the district court. See 47 O.S. 2011 § 6-211. The District Court's review of a driver's license revocation is conducted de novo, "'with the "trial de novo" being a trial of the entire case anew, both on the law and on the facts.'" Muratore v. State ex rel. Dep't of Pub. Safety, 2014 OK 3, ¶ 5, 320 P.3d 1024, 1029.

[18] 47 O.S. 2011 § 754(F).

[19] 47 O.S. 2011 § 754(F).

[20] See also 47 O.S. 2011 § 752(H) ("Tests of blood or breath for the purpose of determining the alcohol concentration thereof, and tests of blood, saliva or urine for the purpose of determining the presence or concentration of any other intoxicating substance therein, under the provisions of this title, whether administered by or at the direction of a law enforcement officer or administered independently, at the option of the tested person, on the excess specimen of such person's blood, breath, saliva or urine, to be considered valid and admissible in evidence under the provisions of this title, shall have been administered or performed in accordance with the rules and regulations of the Board, or performed by a laboratory that is exempt from the Board rules pursuant to Section 759 of this title.").

[21] 47 O.S. 2011 § 756.

[22] Title 75 O.S. Supp. 2013 § 250.2(A) provides:
A. Article V of the Oklahoma Constitution vests in the Legislature the power to make laws, and thereby to establish agencies and to designate agency functions, budgets and purposes. Article VI of the Oklahoma Constitution charges the Executive Branch of Government with the responsibility to implement all measures enacted by the Legislature.

[23] Title 75 O.S. Supp. 2013 § 250.2(B) provides:
B. In creating agencies and designating their functions and purposes, the Legislature may delegate rulemaking authority to executive branch agencies to facilitate administration of legislative policy. In so doing, however, the Legislature reserves to itself:
1. The right to retract any delegation of rulemaking authority unless otherwise precluded by the Oklahoma Constitution;
2. The right to establish any aspect of general policy by legislation, notwithstanding any delegation of rulemaking authority;
3. The right and responsibility to designate the method for rule promulgation, review and modification;
4. The right to approve or disapprove any adopted rule by joint resolution; and
5. The right to disapprove a proposed permanent, promulgated or emergency rule at any time if the Legislature determines such rule to be an imminent harm to the health, safety or welfare of the public or the state or if the Legislature determines that a rule is not consistent with legislative intent.

[24] See Estes v. Conoco Phillips Co., 2008 OK 21, ¶ 10, 184 P.3d 518, 523 ("Pursuant to the Administrative Procedures Act, 75 O.S. 2001 §§250-323, the Legislature may delegate rulemaking authority to agencies, boards, and commissions to facilitate the administration of legislative policy. Administrative rules are valid expressions of lawmaking powers having the force and effect of law.").

[25] Smith v. State ex rel. Dep't of Pub. Safety, 1984 OK 16, ¶ 7, 680 P.2d 365. A remand in today's case is an exercise in futility as DPS cannot prove, without an admissible blood test, that it properly revoked Mr. Trusty's driver's license under the implied consent statutes. Evidence of whether the officer had reasonable grounds to believe a person was driving under the influence cannot, alone, sustain the revocation under the implied consent procedure.

[26] Bryant v. Comm'r of the Dep't of Pub. Safety, 1996 OK 134, 937 P.2d 496, has not been followed in any case involving the implied consent statutes. As recently as February 8, 2016, this Court released for publication and accorded precedential value to an opinion from COCA in Shoptaw v. State ex rel. Dep't of Pub. Safety, 2016 OK CIV APP 32, ___P.3d___. In that case, in an opinion by Judge Wiseman, COCA vacated the driver's license revocation based on an invalid supplemental officer's affidavit under § 754(C). In Muratore v. State ex rel. Dep't of Pub. Safety, 2014 OK 3, 320 P.3d 1024, this Court, with a 6-3 majority, vacated a driver's license revocation because DPS had not carried its burden of proving that a valid breathalyzer test had been performed on a properly maintained testing device under § 754(F)(1) and § 752(H). Notably, after this Court found the breath test invalid and inadmissible, we affirmed the trial court's decision to set aside the revocation. See also Roulston v. State ex rel. Dep't of Pub. Safety, 2014 OK CIV APP 46, 324 P.3d 1261; Tucker v. State ex rel. Dep't of Pub. Safety, 2014 OK CIV APP 45, 326 P.3d 542; Andrews v. State ex rel. Dep't of Pub. Safety, 2014 OK CIV APP 19, 320 P.3d 27; Brockman v. State ex rel. Okla. Dep't of Pub. Safety, 2013 OK CIV APP 48, 301 P.3d 896; State ex rel. Dep't of Pub. Safety v. Kelley, 2007 OK CIV APP 99, 172 P.3d 231.
Additionally, 47 O.S. 2011 § 757, which does "not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence," speaks directly to only one element of DPS' case--whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance. But evidence of whether the officer had reasonable grounds to believe a person was driving under the influence cannot, alone, sustain the revocation under the implied consent procedure.
 


 


KAUGER, J., concurring in part/dissenting in part, with whom WINCHESTER, EDMONDSON, TAYLOR, JJ., join:
¶1 We retained this cause to address whether the State must prove compliance with regulatory requirements for the collection of blood for a blood alcohol content test to be used against a driver in a driver's license revocation proceeding. I agree that DPS bears the burden of showing compliance with regulatory requirements for drawing blood in order to use the test results against a driver. Nevertheless, pursuant to 47 O.S. 2011 §757: "the provisions of sections 751 through 761 of this title do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance." Accordingly, this is not the end of the inquiry. The cause should be reversed and remanded for a determination of "other competent evidence."
¶2 The admissibility of a blood alcohol test against an accused drunk driver is the first portion of this cause. Once the trial court determined that the blood alcohol was inadmissable because there was no evidence presented verifying that the blood was drawn according to the required rules and regulations, neither party asked for a determination of intoxication based upon any evidence other than the blood alcohol test. Consequently, the trial court dismissed the cause.
¶3 In an obvious effort to help to keep drunk drivers off Oklahoma highways, roads, and streets, the Legislature enacted 47 O.S. 2011 §§751-761, otherwise known as the implied consent statutes. Legislative intent is ascertained from the whole act considering its general purpose and objective considering relevant provisions together to give full force and effect to each.[1] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[2] Statutes are interpreted to attain that purpose and to champion the broad public policy purposes underlying them.[3] Only where the Legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.[4]
¶4 As part of this regulatory regime, any person arrested and suspected of driving under the influence of drugs or alcohol or any combination thereof, is entitled to a DPS administrative hearing regarding the future of their driving privileges[5] (additional criminal charges may also apply to such drivers). After an administrative proceeding, the driver may also appeal the matter to the district court.[6] The crux of this district court hearing is that a blood or breath test will be admitted as evidence that the driver was driving under the influence of drugs, alcohol or any other intoxicating substance.[7] However, in the event such tests are unavailable or inadmissable, the Legislature expressly provided an additional opportunity to keep such drivers off the streets by enacting 47 O.S. 2011 §757 which provides:


The provisions of Sections 751 through 761 of this title do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance.
¶5 In Bryant v. Commissioner of Dept. of Public Safety, 1996 OK 134, ¶14, 937 P.2d 496 the Court recognized this precise situation when it held that the trial court may consider other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance. Bryant involved a case wherein DPS failed to provide a requested breath sample to the accused drunk driver which was timely requested pursuant to statute. Although we held because of the failure, the breathalyzer test results were inadmissible, pursuant to §757, we remanded the cause for a determination of other competent evidence bearing on the question of whether the driver was under the influence of alcohol or any other intoxicating substance.
¶6 Bryant has never been overruled and it is controlling. The fact that the Court of Civil Appeals has neglected to follow Bryant's teachings is irrelevant. The Court approved publication in Shoptaw v. State ex rel. Dep't of Pub. Safety, 2016 OK CIV. APP. 32, 370 P.3d 32 because the only notice provided to Shoptaw in the driver's revocation case was invalid because it was based on an invalid affidavit. The only facts presented in that case were that "Shoptaw was arrested in Oklahoma City by Officer William Robison for actual physical control of a motor vehicle while intoxicated" and Shoptaw refused the State's sobriety test and was given the "Officer's Affidavit and Notice of Revocation/Disqualification" (affidavit and notice). There were no other facts presented concerning his driving or arrest.
¶7 In Muratore v. State ex rel. Dep't of Pub. Safety, 2014 OK 3, 320 P.3d 1024, the Court addressed the validity of the breathalyzer test and the lack of appropriate rules concerning its operation. "Other evidence" of the driver's intoxication was expressly disclosed as not being an issue in Muratore because the driver stipulated that the officer had reasonable suspicion to arrest the driver. The only facts presented to the Court regarding the arrest were that "Plaintiff-Appellee Mark Muratore was arrested by Officer Tim Harwell of the Edmond Police Department for operation of a motor vehicle while under the influence of an intoxicating substance. The arresting officer read him the Oklahoma Implied Consent advisory and transported Muratore to the booking area of the Edmond city jail where he voluntarily submitted to a breathalyzer test."
¶8 Trusty crashed his car into playground equipment in a park. The arresting officer observed his condition and smelled alcohol coming from his breath and person. A still cool can of beer was found in the passenger floor board of Trusty's car. The doctor who pulled Trusty from the car immediately after the accident, stated that he was disoriented, and in her opinion, intoxicated. He was found unconscious and had to be taken to the ER to sober up enough to talk to the arresting officer and consent to the blood alcohol test.
¶9 Other evidence existed which could have shown that Trusty may have been "under the influence of alcohol or any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance." DPS is under funded, under staffed and under a mountain of cases which have yet to be tried, yet, the majority inhibits their ability to prove intoxication based solely on test results. This is not the law and it ignores Legislative mandates.
¶10 I am in complete support of keeping our streets clear of drunk drivers.[8] DPS cannot nullify the statutes, rules and regulations by omitting required evidence. DPS is required to prove consent to and performance of a valid chemical test, or the refusal of the driver to submit to such a test, in order to revoke a license and nothing in this opinion changes that Legislative directive. However, in the event, the test is determined to be inadmissable, the Legislature has also directed that the trial court may consider other competent evidence bearing on the question of whether the person was under the influence of alcohol or any other intoxicating substance. We cannot ignore this directive simply because it may or may not be futile based upon existing evidence. Without this directive, the implied consent statutes are meaningless and the Legislative goal of keeping drunk drivers off our streets is easily thwarted by the mere inadmissibility of a blood or breath test and ignoring the factual events which occurred, resulting in a revocation in the first place. This is precisely the effect of the majority opinion in this cause. Another drunk driver is released to freely drive the streets because of a technicality with a test result without considering all of the other evidence showing that he was indeed drunk. This defies logic, common sense and, statutory law.

FOOTNOTES

[1] Clifton v. Clifton, 1990 OK 88, ¶7, 801 P.2d 693, 696, Maule v. Indep. Sch. Dist. of Oklahoma Cnty. 185 OK 110, ¶11, 714 P.2d 198, 203, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm's, 1988 OK 117, ¶7,764 P.2d 172, 179.

[2] King v. King, 2005 OK 4, ¶ 22, 107 P.3d 570, Fuller v. Odom, 1987 OK 64, ¶4, 741 P.2d 449, 453; Darnell v. Chrysler Corp., 1984 OK 57, ¶5, 687 P.2d 132, 134.

[3] See King v. King, at ¶22 note 2 supra, State ex rel. Dept. of Human Serv. v. Colclazier, 1997 OK 134, ¶9, 950 P.2d 824, 827, Matter of Estate of Flowers, 1993 OK 19, ¶11, 848 P.2d 1146, 1151.

[4] See King v. King, at ¶ 22 see note 2 supra, Haggard v. Haggard, 1998 OK 124, ¶1, 975 P.2d 439, 442; Price v. Southwestern Bell Tel. Co., 1991 OK 50, ¶7, 812 P.2d 1355, 1358.

[5] Title 47 O.S. 2011 §754.

[6] Title 47 O.S. 2011 §755 provides:
If the revocation or denial is sustained, the person whose license or permit to drive or nonresident operating privilege has been revoked or denied may file a petition for appeal in the district court in the manner and subject to the proceedings provided for in Section 6-211 of this title. The district court may modify the revocation or denial when it is determined by the court that the person whose license or permit to drive has been revoked or denied has no other adequate means of transportation and may enter a written order directing the Department of Public Safety to allow driving, subject to the limitations of Section 6-205.1 of this title and the requirement of an ignition interlock device as provided in Section 754.1 of this title; provided, any modification under this paragraph shall apply to Class D motor vehicles only.

[7] Title 74 O.S. 2011 §756.

[8] The purpose of revocation or suspension is to protect the public, not punish the licensee. Robertson v. State ex rel. Lester, 1972 OK 126, ¶14, 501 P.2d 1099.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2007 OK CIV APP 99, 172 P.3d 231, STATE ex rel. DEPT. OF PUBLIC SAFETY v. KELLEY
Discussed
 2013 OK CIV APP 48, 301 P.3d 896, BROCKMAN v. STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY
Discussed
 2014 OK CIV APP 19, 320 P.3d 27, ANDREWS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2014 OK CIV APP 45, 326 P.3d 542, TUCKER v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2014 OK CIV APP 46, 324 P.3d 1261, ROULSTON v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2016 OK CIV APP 32, 370 P.3d 1217, SHOPTAW v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 43, 725 P.2d 1254, 57 OBJ 1704, Price v. Reed
Discussed
 2000 OK 94, 24 P.3d 821, 71 OBJ 3219, HARKRIDER v. POSEY
Cited
 1987 OK 64, 741 P.2d 449, 58 OBJ 2057, Fuller v. Odom
Discussed
 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1990 OK 78, 795 P.2d 1048, 61 OBJ 2091, Chase v. State ex rel. Dept. of Public Safety
Discussed at Length
 1990 OK 88, 801 P.2d 693, 61 OBJ 2366, Clifton v. Clifton
Discussed
 1991 OK 50, 812 P.2d 1355, 62 OBJ 1785, Price v. Southwestern Bell Telephone Co.
Discussed
 1993 OK 19, 848 P.2d 1146, 64 OBJ 817, Estate of Flowers, Matter of
Discussed
 1972 OK 126, 501 P.2d 1099, ROBERTSON v. STATE EX REL. LESTER
Discussed at Length
 2005 OK 4, 107 P.3d 570, KING v. KING
Discussed
 2005 OK 49, 120 P.3d 480, TAPP v. PERCIFUL
Discussed
 2008 OK 21, 184 P.3d 518, ESTES v. CONOCOPHILLIPS CO.
Discussed
 1996 OK 134, 937 P.2d 496, 68 OBJ 25, Bryant v. Commissioner of Dept. of Public Safety
Discussed at Length
 1980 OK 21, 606 P.2d 1131, White v. Oklahoma Dept. of Public Safety
Discussed
 2014 OK 3, 320 P.3d 1024, MURATORE v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length
 1997 OK 134, 950 P.2d 824, 68 OBJ 3526, STATE ex rel. DEPT. OF HUMAN SERVICES v. COLCLAZIER
Discussed
 1998 OK 124, 975 P.2d 439, 69 OBJ 4267, Haggard v. Haggard
Discussed
 1984 OK 16, 680 P.2d 365, Smith v. State ex rel. Dept. of Public Safety
Discussed
 1984 OK 57, 687 P.2d 132, Darnell v. Chrysler Corp.
Discussed
 1985 OK 110, 714 P.2d 198, 57 OBJ 22, Maule v. Independent School Dist. No. 9 of Tulsa County
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 761, Operation of Motor Vehicle While Impaired - Penalties - Suspensions - Violations Not Bondable
Cited
 47 O.S. 6-211, Right of Appeal to Court
Cited
 47 O.S. 751, Implied Consent to Breath, Blood, or Other Test for Determining Concentration of Alcohol or Other Intoxicating Substance
Cited
 47 O.S. 752, Procedure for Blood Tests - Authorization - Liability for Withdrawal - Reports
Discussed at Length
 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Discussed at Length
 47 O.S. 759, Board of Tests for Alcohol and Drug Influence - Members - Authority - Rules - Revolving Fund
Cited
 47 O.S. 755, Appeal
Cited
 47 O.S. 753, Refusal to Submit to Test - Revocation of License - Reinstatement of License
Discussed
 47 O.S. 756, Admission of Evidence Shown by Tests
Cited
 47 O.S. 757, Other Competent Evidence - Admissibility
Discussed at Length
Title 74. State Government
 Cite
Name
Level

 74 O.S. 756, Repealed
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 250.2, Powers of Legislature - Reserved Powers
Discussed